UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6309-CR-SEITZ/GARBER

NIGHT BOX
FILED

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA

    Plaintiff,

v.

JOHN MAMONE,

    Defendant.
_____/

GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR ORDER ALTERING BOND

The United States of America, through its undersigned attorneys, respectfully files the following memorandum in opposition to defendant's Motion for Order Altering Bond:

BACKGROUND

On October 24, 2000, a federal grand jury sitting in Fort Lauderdale returned a 70 count indictment charging the defendant and eighteen other persons with participating in an enterprise that was associated with the Trafficante Organized Crime Family. Mamone, a leader in the organization, was charged with RICO conspiracy, operating an illegal gambling business, loansharking conspiracy, obstruction of state law enforcement, money laundering conspiracy and substantive money laundering.

On October 31, 2000, a pretrial detention was held before States Magistrate Judge Stephen T. Brown. There, the government

#274
H

argued that the defendant should be detained for trial on the grounds that he was a danger to the community and a flight risk.

At the hearing the government proffered that the defendant was a danger to the community because he had committed violent acts against victims in the instant case. The Court was informed that the defendant had beaten three individuals in the collection of loanshark debts owed to the organization. On one such occasion in early 2000, the defendant met with a cooperating witness who owed a substantial debt to Mamone. The defendant picked the witness up in his vehicle, demanded payment, struck him twice in the face and attempted to bite the witnesses ear off. On another occasion, the defendant beat a loanshark victim with a baseball bat. The Court was further informed that the defendant had, on several occasions, threatened persons on the telephone concerning the payment of debts.

The government also advised the Court that the defendant was involved in a substantial RICO enterprise that was responsible for laundering approximately $20,000,000 in funds involved in a fraud committed in South Carolina and South Florida, among other serious crimes. The Court was informed that based upon an approximation of the amount of funds involved and the criminal history of the defendant, that upon conviction a conservative estimate of the sentence he would receive would be

within the guideline range of 235 to 293 months(Level 37, Criminal History II, USSG).

The Court was also informed that the defendant committed the offenses in the indictment while he was on probation after being convicted in 1994, for bribery in the state of New Jersey, which probation ended in mid 2000. Furthermore, the defendant was on federal probation from 1995 through 1997 for his conviction for mail fraud. Both probationary periods covered the time period charged in the indictment (1995 through October 2000). In conclusion, the government argued that the defendant has continued to demonstrate that he would not abide by any condition of release, making detention necessary.

At the conclusion of the hearing, the Court denied the detention request on both grounds but opined that there was evidence to demonstrate that the defendant was a danger to the community. However, the Court indicated that a restrictive bond could be fashioned to ensure that the defendant would not be a danger to the community or a risk of flight. The Court ordered that the defendant post a $500,000 corporate surety bond with a <u>Nebia</u> requirement and a $500,000 personal surety bond that required third-party signatures. The Court also ordered that further conditions of bond would be house arrest with electronic monitoring, consensual electronic monitoring of defendant's telephone, among other conditions.

At the time of the bond hearing, defendant argued that his friends and neighbors were willing to provide the premium for the bond and the collateral to the bondsman. Based upon these assurances the government did not object to the bond set by the Court and agreed that the standards of <u>Nebia</u> had been met.

ARGUMENT

Defendant now requests that the Court reduce the corporate surety bond because his friends and neighbors no longer wish to pledge their assets in return for defendant's release.

It must be noted that at least part of the consideration for the bond package was the support of the defendant's friends and neighbors that was proffered at the detention hearing. Their confidence in the defendant's good standing in the community had to have been an important consideration in the Court's decision to permit the defendant's release even though the Court had determined that the defendant was a danger to the community. Now, in a little more than one month, the circumstances suspiciously have changed. The defendant no longer has the support of at least two friends who pledged their property (real estate and watches) as collateral to the corporate surety. It seems doubtful that these persons ever intended to pledge their property to the corporate surety until the conclusion of the criminal proceedings. Instead, a more reasonable conclusion is that these individuals merely intended to pledge their assets

until the defendant was released on bond and then request a return of the property. At best this was a disingenuous act on the part of the defendant in order to obtain release.

In any event, clearly, the time period covered by the $500,000 corporate surety bond was intended to be until the conclusion of the criminal proceedings against the defendant and not simply until one or more of the persons decide to rescind their agreement to pledge assets with the corporate surety. Rather, the bond set by the Court is directly related to a complicated bond package to ensure that the defendant will appear as required in this case and not pose a danger to the community. The government contends that the fact that these persons no longer wish to pledge their assets with the corporate surety should have no bearing on the appropriateness of the $500,0000 corporate surety bond.

The defendant has the obligation to obtain other assets that comply with <u>Nebia</u> to replace his friends and neighbors assets with the corporate surety just as he had the original obligation on October 31, 2000. In the alternative, if the defendant is unable to provide additional collateral for the original $500,000 corporate surety bond, the Court should order him detained pending trial.

Wherefore, for the reasons set forth above, the government respectfully requests that the defendant's Motion For Order Altering Bond be denied in all respects.

Respectfully submitted,

GUY A. LEWIS

By: _____
J. BRIAN MCCORMICK
ASSISTANT UNITED STATES ATTORNEY
Court ID # A5500084
500 E. Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Facsimile: (954) 356-7230

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed this 15th day of December, 2000, to:

David Rothman, Esq.
First Union Financial Center
200 S. Biscayne Blvd., Suite 2690
Miami, FL 33131

                                J. BRIAN McCORMICK
                                ASSISTANT UNITED STATES ATTORNEY