UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA          CASE NUMBER: 00-6309-CR-Seitz

  Plaintiff,

vs.

JOHN MAMONE

  Defendant.
_____/

### DEFENDANT JOHN MAMONE'S REQUEST FOR HEARING AND REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT MAMONE'S MOTION FOR ORDER ELIMINATING HOUSE ARREST

THE DEFENDANT, JOHN MAMONE, through counsel, replies to the Government's Response and, further, moves this Court to schedule a hearing on the Motion and Response. In brief support thereof, the defense proffers the following facts and argument:

1. The Government's allegation that Mr. Mamone violated the law by attempting to work with Keystone, a transportation company, is legally and factually wrong. Nothing John Mamone did or said in regard to Keystone in any way approached a violation of the protective order in effect as to Gateway Transportation, its owners and certain employees, including Defendants John Mamone and David Bell, or, as alleged in the Government's response, constituted the crime of obstruction of justice.

Keystone, which was never a customer of Gateway, came to John Mamone to discuss a legitimate business arrangement. Gateway had been forced to close down, in part, by the Government's freezing, and refusal to unfreeze, accounts that were needed to pay drivers and fuel

expenses. Grace Mamone, John's wife and a part owner of Gateway, and John Mamone, an employee of Gateway, were forced to the brink of bankruptcy by the Government's actions and were trying to save their home and pay necessary expenses. Whatever business opportunity could have been developed with Keystone, which the Government's heavy-handed tactics have now precluded, were entirely lawful.

2. The remainder of the Government's Response is a louder version of their proffer at the pretrial detention hearing.[1] Cursing and yelling by Mr. Mamone constitute rude and vulgar behavior, but probably do not rise to the level of a criminal offense or a violation of a condition of bond. The defense is confident the Government's use of conversations that are admittedly vulgar will not inappropriately sway this Court.[2]

3. As to Mr. Polito, if the Government was so concerned with Mr. Mamone's incredibly dangerous and violent personality, how did they permit an informant, or why would an informant on his own agree, to meet with Mr. Mamone without the protection of surveillance, either in person or via a body bug? If this violent encounter actually occurred, where is (are) the tape recording(s) of the conversation(s) following the encounter that corroborate the violence?

4. In light of the memorandum, dated March 19, 2001, from David Nuby, John Mamone's PTS supervisor, a copy of which was received by the defense on March 20, the defense finds itself in an untenable position. On the one hand, the defense would like to take at face value the response by Mr. Nuby that he did not feel intimidated by the Government. On the other hand,

---

[1] As in its original proffer, the Government, in its Response, has made factually incorrect or incomplete statements that, if the Court grants the defense request for a hearing, will be addressed.

[2] The quoted conversations used by the Government in its Response are identical to the conversations previously utilized at the pretrial detention hearing.

Page -2-

if he were not at least affected by the "discussion" with the two prosecutors and the two agents, why then did he not afford the defense an opportunity to respond to the Government's presentation? After all, had he done so, he would have learned the so-called threat to an off duty police officer allegedly occurred a decade ago. And he would have also learned that the case was dismissed.

Additionally, Mr. Nuby supervised Mr. Mamone in the past, before the present indictment was returned. It was his idea to file the motion to delete house arrest. If the Court goes back to the recommendation of Pretrial Services at the time of Mr. Mamone's arrest, it will find that the bond recommended was a $250,000 corporate surety bond and a $150,000 personal surety bond. At the time Mr. Mamone was arrested, as indicated in the same report, Pretrial Services was aware of the charges in this case, including the extortion charges which were part of the original indictment, but not of the superceding indictment. Finally, except for the noncrime relating to Gateway Transportation (see ¶ 1 *infra.*), everything the Government alleges as part of its Response was raised at the PTD hearing.

Therefore, although defense counsel has personally met with and spoken with Mr. Nuby and finds him to be a consummate professional, it would not be the first time an individual with the best of intentions was forced into a corner by the Government. Again, the Defense wants the Court to know that the prosecutor has specifically denied any bad or improper motivation and the defense absolutely believes him. In any event, the position of Pretrial Services now is that the Court should alter the conditions of release so PTS has the discretion to grant or deny Mr. Mamone's request(s) for permission to leave his home.[3]

---

[3]Counsel distinctly remembers the conversation between counsel and Mr. Nuby that is reflected in both the motion and Mr. Nuby's memorandum. Counsel specifically recalls asking Mr.
(continued...)

Thornton & Rothman, P.A. Attorneys at Law
Suite 2690, First Union Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131 • Telephone (305) 358-9000 • Telefax (305) 374-5747

5.  In its Response as to Mr. Mamone's "Desire to Work," the Government claims the way Mr. Mamone plans to earn a living "falls short of verifiable employment." How can John Mamone have the opportunity to provide verification of employment if he is under twenty-four (24) hour house arrest? Respectfully, if this Court enters an Order permitting John Mamone to work, he will prove he is working.

6.  Not that this ever happens in litigation, but a somewhat cynical evaluation of the Government's request to revoke bond, filed only after receiving the defense motion to terminate house arrest, might lead one to the conclusion that the Government's exaggerated response is a thinly veiled attempt at persuading the Court to employ the "wisdom of Solomon" and deny both motions. Like Solomon certainly would, this Court should see through that ploy.

WHEREFORE, the Defendant, John Mamone, respectfully submits this Reply and, further, requests that this Court set a hearing on the Motion and the Response.

Respectfully Submitted,

THORNTON & ROTHMAN, P.A.
200 South Biscayne Boulevard
Suite 2690
Miami, Florida 33131
(305) 358-9000

BY: 
For DAVID ROTHMAN
Florida Bar #240273

---

(...continued)
Nuby as a follow-up to his statement that he had no objection to the deletion of the house arrest condition of the bond, something to the effect of "Can I include in the motion that you agree with the request?" Mr. Nuby responded, something to the effect of "I cannot say that," not "that is not my position." In any event, before filing the motion, a copy was provided to Mr. Nuby and he told counsel's staff that the motion accurately stated his position.

Page -4-

Thornton & Rothman, P.A. Attorneys at Law
Suite 2690, First Union Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131 • Telephone (305) 358-9000 • Telefax (305) 374-5747

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply to Government's Response to Defendant John Mamone's Motion For Order Eliminating House Arrest Component of Bond was forwarded via facsimile to Assistant U.S. Attorneys Brian McCormick and Diana Fernandez, 500 East Broward Blvd., Suite 700, Ft. Lauderdale, FL 33301 on this the 22nd day of March, 2001.

For DAVID ROTHMAN

Page -5-

Thornton & Rothman, P.A. Attorneys at Law
Suite 2690, First Union Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131 • Telephone (305) 358-9000 • Telefax (305) 374-5747