Unsealed _____ ~~SEALED~~

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ/GARBER(S)(S)

UNITED STATES OF AMERICA,
        Plaintiff,

v.                                     **UNDER SEAL**

JOHN MAMONE,
        Defendant.
_____/

### SUPPLEMENTAL SEALED ATTACHMENT TO GOVERNMENT'S EX PARTE SEALED MOTION FOR REVOCATION OF BOND AND APPLICATION FOR ARREST WARRANT FOR DEFENDANT JOHN MAMONE

The United States of America, through its undersigned attorneys, files this Supplemental Sealed Attachment to Government's Ex Parte Motion for Revocation of Bond and application for an arrest warrant for defendant JOHN MAMONE.

                      Respectfully submitted,

                      GUY E. LEWIS
                      UNITED STATES ATTORNEY

By: _____
    J. BRIAN McCORMICK
    ASSISTANT UNITED STATES ATTORNEY
    Court I.D. #A5500084
    500 East Broward Blvd., Suite 700
    Fort Lauderdale, FL 33394
    Telephone: (954) 356-7392
    Fax: (954) 356-7230

By: _____
    DIANA L.W. FERNANDEZ
    ASSISTANT UNITED STATES ATTORNEY
    Court I.D. #A5500017
    500 East Broward Blvd., Suite 700
    Fort Lauderdale, FL 33394
    Telephone: (954) 356-7392
    Fax: (954) 356-7230

## AFFIDAVIT

I, Christopher Starrett, being duly sworn, deposes and state:

1. That for the past two years I have been employed as a Special Agent of the Federal Bureau of Investigation (FBI) assigned to OC-1 of the Miami Division. I make this affidavit on the basis of my personal knowledge and information related to me by other agents of the FBI and cooperating witnesses in this case.

2. On August 14, 2001, a grand jury sitting in Fort Lauderdale returned a sealed superseding indictment charging MAMONE and thirteen other persons with various acts of racketeering. Among those charged was JOHN O'SULLIVAN, who conducted the business of the enterprise after MAMONE was placed on house arrest.

3. Your Affiant submits that the defendant's bond should be revoked and an arrest warrant should be issued. Since release and while on house arrest, the defendant has been in almost continuous violation of the conditions of the bond set by the Court. In short, since November 2000, the defendant has been committing several violations of federal law, including the making of extortionate extensions of credit in violation of Title 18, United States Code, Section 892, collecting extensions of credit by extortionate means in violation of Title 18, United

States Code, Section 894, and sale or receipt of stolen goods in violation of Title 18, United States Code, Section 2315, among other crimes.

4. Beginning in June 2001, a cooperating witness (CW) began assisting the FBI in this investigation. The CW has advised the FBI that he is personally acquainted with MAMONE, O'SULLIVAN, and DAVID BELL, another codefendant in this case. On the basis of personal conversations with MAMONE after MAMONE was placed on house arrest, the CW learned that O'SULLIVAN has been working for MAMONE's organization. The CW is also aware of this from conversations with O'SULLIVAN. In making these collections, O'SULLIVAN has informed the CW that "every once in a while you have to give someone a good ass whopping" (assault).

5. On July 11, 2001, O'SULLIVAN informed the CW that Jeffrey Bass, a codefendant in the instant case who is also cooperating with the government, owed MAMONE $40,000 and that O'SULLIVAN would probably have to assault Bass because he had not made his payments. On at least two occasions, at O'SULLIVAN's request, the CW accompanied O'SULLIVAN in an effort to find Bass and assault him.

6. On July 13, 2001, in a recorded conversation, the CW and O'SULLIVAN had a conversation about starting a business together. O'SULLIVAN suggested that both O'SULLIVAN and the CW borrow the money from MAMONE. Within a few days, O'SULLIVAN informed the CW that MAMONE had agreed to lend them $6000

2

provided that the CW and O'SULLIVAN repay MAMONE $10,000 by August 1, 2001. O'SULLIVAN acknowledged that MAMONE wanted a profit of 40% "Vig" (usurious interest) within two weeks of making the loan and an additional $2,000 tribute payment per month, once the business began to operate.

7. On July 20, 2001, in a recorded conversation, O'SULLIVAN requested that the CW make a pretext call to Bass, who operated a roofing business. The CW was asked to make an appointment with Bass for a new roof in order to "set up" Bass for a beating because of non-payment on the MAMONE loan.

8. In early December 2000, while under house arrest, defendant MAMONE represented a company called First Choice in the negotiation of a sub-hauling contract with a company called Keystone, which was a transportation company located in New Jersey. First Choice had agreed to assist Keystone by hauling goods from South Florida to the west coast of the United States. Among the goods to be hauled were various clothing lines, including Tommy Hilfiger, Levi Strauss and Ralph Lauren.

9. Although defendant MAMONE negotiated the contract with Keystone, codefendant DAVID BELL was involved in the day to day operation of First Choice.

10. Under this oral contract, several loads were transported in December of 2000. One of the loads was delivered to the ultimate destination by employees of First Choice but there was a portion of the load missing. Keystone estimated

3

that goods that had an approximate value of $40,000 were not delivered. The goods that were stolen from this shipment consisted of shirts and jeans from manufacturers such as Tommy Hilfiger, Levi Strauss and Ralph Lauren.

11. During early 2001, and prior to cooperating with the government, the CW informed the FBI that he had participated with BELL, MAMONE and O'SULLIVAN in selling some of the stolen clothing that was taken from the First Choice shipments during the month of December 2000. According to the CW, O'SULLIVAN, BELL and the CW actively sold the stolen goods to various sources. Also, the CW was aware through conversations with MAMONE and O'SULLIVAN that MAMONE received a share of the profits even though he was under house arrest.

12. On July 3, 2001, in a recorded conversation, O'SULLIVAN acknowledged that MAMONE had received $5,000 from the sale of some of the goods that were stolen during December 2000. O'SULLIVAN confirmed that he had delivered the money to MAMONE while MAMONE was under house arrest.

FURTHER AFFIANT SAYETH NAUGHT

_____
Christopher Starrett, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed
before me this 17th day
of August, 2001

_____
Notary Public



MARLENE FELDMAN
MY COMMISSION # CC 766725
EXPIRES: December 12, 2002
Bonded Thru Notary Public Underwriters

4

```
                                                            BLG

                         U.S. District Court
              FLS - Southern District of Florida FtLauderdale

                  CRIMINAL DOCKET FOR CASE #: 00-CR-6309

USA v. Raffa, et al.                                  Filed: 10/24/00
Assigned to: Patricia A. Seitz


Dkt # in other court: None

08/14/01   516         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/14/01   517         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/14/01   518         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/14/01   519         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/14/01   520         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/15/01   512         SEALED DOCUMENT (sp) [Entry date 08/16/01]

08/15/01   513         SEALED DOCUMENT (sp) [Entry date 08/16/01]

08/15/01   514         ORDER as to John Mamone denying [413-1] motion to alter
                       certain conditions of pretrial release as to John Mamone
                       (2) ( Signed by Magistrate Stephen T. Brown on 8/14/01)
                       [EOD Date: 8/16/01] CCAP☐ (dg) [Entry date 08/16/01]

08/15/01   521         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/15/01   522         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/16/01   523         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/17/01   524         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/17/01   525         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/17/01   526         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/17/01   527         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/17/01   528         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/17/01   529         SEALED DOCUMENT (sp) [Entry date 08/21/01]

08/20/01   515         NOTICE of filing letter regarding pending discovery issues
                       by Fred Morgenstern (dg) [Entry date 08/21/01]
```

Attached to D.E. # 527