UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6309-CR-SEITZ

UNITED STATES OF AMERICA,

    Plaintiff,

VS.

JOHN MAMONE,

    Defendant.
_____/

**NIGHT FILED**

SEP 03 2003

CLARENCE
CLERK, USDC

### GRACE MAMONE'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO GRACE MAMONE'S MOTION TO STAY RESTITUTION PAYMENTS

COMES NOW a Third Party, Grace Mamone, by and through her undersigned counsel, and replies to the Government's Response in Opposition to her Motion to Stay Restitution Payments, and states as follows:

1. Contrary to the Government's representation, the Mamone family has undergone a significant and substantial change in circumstances which has occurred since the restitution hearing. For example, the weekly checks that Grace Mamone was receiving from Cargo Transportation Services, Inc. have stopped and her health and dental plans have been cancelled by the company. See attached documents.

2. Additionally, in that no taxes were previously taken out of Grace Mamone's commission checks, she is actually earning far less money now than originally contemplated at the time the restitution schedule was imposed.

PERS-GMB 368767.1

1

LAW OFFICES OF RICHARD L. ROSENBAUM
350 EAST LAS OLAS BOULEVARD, SUITE 1700, LAS OLAS CENTRE • FORT LAUDERDALE, FLORIDA 33301 • TELEPHONE (954) 522-7007

3. Further, based upon an installment sale of stock for Cargo Transportation Services, Inc., the amount of money that Grace Mamone receives has greatly diminished.

4. Because of a lack of funds, Grace Mamone has been forced to stop payment on the majority of the insurance policies on her husband, John Mamone's life.

5. Grace Mamone has likewise changed her lifestyle by getting rid of the storage shed which she used for years at the cost of $240.00 per month and has attempted to sell her cars, but has thus been unable to do so.

6. The Mamone family bills that were outstanding at the time that John Mamone was taken into custody have not gone away. In fact, because Grace Mamone is unable to make the necessary payments, she is incurring additional expenses in the form of late charges and late fees on the bills.

7. This Honorable Court suggested that Grace Mamone change her lifestyle. She has done so. She started working at Westchester Elementary at $6.00 per hour. She has reduced her children's insurance payments, and the children are now in Florida Kids Care. She has been attempting to sell or refinance her house, but because the Government took so long in removing the *lis pendens* on the property, she has been unable to do so.

WHEREFORE, based upon the foregoing grounds and those set forth in Grace Mamone's Motion to Stay Restitution Payments, Grace Mamone requests the Restitution Order be stayed or, alternatively, that the amount of restitution payable from her be reduced.

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 3rd **day of September, 2003**, to: AUSA Diana L.W. Fernandez and AUSA J. Brian McCormick, Office of the United States Attorney, 500 East Broward Boulevard, Suite 700, Ft. Lauderdale, FL 33394.

        Respectfully Submitted,

        LAW OFFICES OF RICHARD L. ROSENBAUM
        350 EAST LAS OLAS BOULEVARD
        SUITE 1700
        FT. LAUDERDALE, FL 33301
        PHONE NO: (954) 522-7007
        FAX NO:   (954) 522-7003
        FLA. BAR NO: 394688

        BY: _____
        RICHARD L. ROSENBAUM

## INSTALLMENT SALE OF STOCK FOR CARGO TRANSPORTATION SERVICES, INC.

$ 555,514.98

Coral Springs, Florida
June 10, 2001

**FOR VALUE RECEIVED**, the undersigned, **STACEY BELL**, an individual ("Maker"), promises to pay to the order of **GRACE ANNA MAMONE** an individual, or their successors or assigns ("Lender") the principal sum of five hundred fifty-five thousand five hundred fourteen and 98/100 Dollars ($ 555,514.98) is hereinafter provided (the "Loan") for the purchase of the remaining fifty percent interest (stock sale) of Cargo Transportation Services, Inc. a Florida Corporation.

Principal and interest shall be due and payable as follows:

Commencing on the first (1ˢᵗ) day of the first calendar month after the execution date noted above and continuing thereafter on the first day of each and every month, through and including May 10, 2011, monthly payments of principal and interest of six thousand four hundred fifty dollars and 00/100 ($ 6,450.00) computed at the rate of six and three quarters percent (6.75%) per annum for the $ 555,514.98 of the average daily outstanding balance shall be due and payable. If not sooner paid, the entire unpaid principal balance of this promissory note, together with all interest accrued thereon, shall be due and payable on May 10, 2011. This installment sale may be partially or fully prepaid, without penalty. Provided, however, if Maker is sold (by sale or transfer of all or substantially all of the assets of the Maker, by sale or transfer of a controlling interest of the Maker's stock, by merger or otherwise), the entire unpaid principal balance of this installment sale, together with all interest accrued thereon, shall, at the option of the Lender, be immediately due and payable.

All installments of principal and/or interest shall be make to Grace Mamone and are payable at 1960 Augusta Terrace Coral Springs, FL 33071, or at such other place as Lender hereof may, from time to time, designate in writing, in lawful money of the United States of America which shall be legal tender for public and private debts at the time of payment.

If default is made in the payment of any part of the principal of or interest due under the terms of this installment sale, this installment sale shall be in default and the entire principal sum and accrued interest shall become due and payable at once without further notice and demand at the option of the Lender. While in default,

the principal of this installment sale shall bear interest at a rate equal to the maximum rate permissible under Florida law (the Default rate").

In addition to the above, Lender shall be paid a late charge not to exceed an amount equal to five percent (5%) of any installment which is not paid within fifteen (15) days of the due date thereof to cover the extra expense involved in handling delinquent payments.

This installment sale may be prepaid in whole or in part without penalty. Partial payment shall not relieve Maker of the obligation of paying all payments as they become due thereafter, until all amounts due and payable under this installment sale have been paid in full.

Maker hereby submits to the jurisdiction of the courts of the State of Florida in the event any litigation arising from or related to this Note is commenced. Maker agrees that Lender may institute any cause of action against Maker involving this Note in the courts of Broward County, Florida, and hereby waives any venue privilege or right to be sued in any other forum.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note the day and year first hereinabove provided.

Witness                         Stacey Bell, an individual

                                By:
                                Name: Stacey Bell

## PROMISSORY NOTE

$ 88,500.00

Coral Springs, Florida
May 7, 2001

**FOR VALUE RECEIVED**, the undersigned, CARGO TRANSPORTATION SERVICES, INC. a Florida corporation ("Maker"), promises to pay to the order of ANNA GRACE MAMONE, or their successors or assigns ("Lender") the principal sum of eighty eight thousand five hundred and 00/100 Dollars ($ 88,500.00) or such lesser amount that actually may be advanced to Maker and remain outstanding plus interest as hereinafter provided (the "Loan"). Any amounts advanced under this Promissory Note and then repaid will decrease the maximum Principal Amount of this Promissory Note by the amount of such repayment. The interest rate set forth herein shall be referred to as the "Note rate".

Principal and interest shall be due and payable as follows:

Commencing on the first (1st) day of the first calendar month after the execution date noted above and continuing thereafter on the first day of each and every month, through and including September 30, 2004, monthly payments of principal and interest are due as follows: First thirty-six months (36) is two thousand five hundred ninety-five dollars and 00/100 ($ 2,595.00), the next seven (7) payments is four thousand and 00/100 dollars ($ 4,000.00) and a final payment of two thousand four hundred sixty-one and 17/100 dollars ($ 2,461.17) computed at the rate of eighteen percent (18.00%) per annum for the $ 88,500.00 of the average daily outstanding balance shall be due and payable. If not sooner paid, the entire unpaid principal balance of this promissory note, together with all interest accrued thereon, shall be due and payable on September 30, 2004. This promissory Note may be partially or fully prepaid, without penalty. Provided, however, if Maker is sold (by sale or transfer of all or substantially all of the assets of the Maker, by sale or transfer of a controlling interest of the Maker's stock, by merger or otherwise), the entire unpaid principal balance of this Promissory Note, together with all interest accrued thereon, shall, at the option of the Lender, be immediately due and payable.

All installments of principal and/or interest shall be make to Grace Mamone and are payable at 1960 Augusta Terrace Coral Springs, FL 33071, or at such other place as Lender hereof may, from time to time, designate in writing, in lawful money of the United States of America which shall be legal tender for public and private debts at the time of payment.

PROMISSORY NOTE

If default is made in the payment of any part of the principal of or interest due under the terms of this Note, this Note shall be in default and the entire principal sum and accrued interest shall become due and payable at once without further notice and demand at the option of the Lender. While in default, the principal of this Note shall bear interest at a rate equal to the maximum rate permissible under Florida law (the Default rate").

This note may be prepaid in whole or in part without penalty. Partial payment shall not relieve Maker of the obligation of paying all payments as they become due thereafter, until all amounts due and payable under this Note have been paid in full.

Maker hereby submits to the jurisdiction of the courts of the State of Florida in the event any litigation arising from or related to this Note is commenced. Maker agrees that Lender may institute any cause of action against Maker involving this Note in the courts of Broward County, Florida, and hereby waives any venue privilege or right to be sued in any other forum.

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note the day and year first hereinabove provided.

Witness                     Cargo Transportation Services, Inc.

[signature]                 By: [signature]
                            Name: Anna Grace Mamone
                            Title: President

**THIS AGREEMENT** is entered into on July 1, 2001 by and between ANNA GRACE MAMONE, whose address is 1960 Augusta Terrace, Coral Springs, Florida 33071 ("SELLER"), and STACY BELL, whose address is 7705 Andes Lane, Parkland, Florida 33067 ("BUYER").

RECITALS

A. CARGO TRANSPORTATION SERVICES, INC. (the "COMPANY") is a Florida corporation in good standing with all of its shares of common capital STOCK issued and outstanding.

B. The SELLER is the owner of shares of the common capital of the COMPANY, comprising FIFTY PERCENT (50%) of all the issued and outstanding common capital ("the STOCK").

C. The SELLER desires to sell and the BUYER desires to buy the STOCK under the terms and conditions set forth herein.

THEREFORE, in consideration of the promises mutually exchanged in this Agreement and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

AGREEMENT

1. <u>Sale of Shares</u>. Subject to the provisions of this Agreement, the SELLER agrees to sell the STOCK to the BUYER. The SELLER agrees to execute such additional documents as the BUYER deems necessary to perfect the BUYER's title to the STOCK.

2. <u>Purchase Price</u>. The purchase price shall be FIVE HUNDRED AND FIFTY FIVE THOUSAND, FIVE HUNDRED AND FOURTEEN DOLLARS AND NINETY EIGHT CENTS ($555,514.98). This purchase price shall not be paid in a lump sum, but instead shall be paid in installments, including principal and interest, of SIX THOUSAND FOUR HUNDRED FIFTY DOLLARS ($6,450) per month commencing on August 1, 2001 and continuing thereafter on the first day of each consecutive month, through and including May 1, 2011.

3. <u>Default</u>. If the BUYER fails to make payment of any one of the installments when they shall become due, and in case the payment is not made after TWENTY (20) days' notice of such default, the SELLER may retain any deposits paid by the BUYER and redeem the STOCK transferred to BUYER as liquidated damages. In this event, the parties shall be relieved of all obligations under this Agreement. Additionally, the BUYER shall have the option to buy the STOCK for a lump sum amount representing the unpaid balance of the purchase price.

4. <u>Representations and Warranties of SELLER</u>. The SELLER hereby represents that SELLER has good, absolute, and marketable title to the STOCK, free from all liens, claims, and encumbrances. The SELLER has the unfettered right, power, and authority to sell all of the STOCK under this Agreement. Delivery of the STOCK to

1     INITIALS: Buyer_____ Seller_____

THE BUYER as contemplated
STOCK in the BUYER.

5. **Termination.** This Agreement may be terminated by the BUYER if COMPANY assets suffer any loss or casualty, which substantially affects the value of the STOCK transferred by this Agreement or the use of COMPANY assets, irrespective of insurance. On the occurrence of this event, the parties may agree upon an amount by which the purchase price shall be reduced by reason of such event, in which case the BUYER shall not terminate this Agreement and the purchase price shall be so reduced.

6. **Governing Law.** This Agreement shall be governed in its enforcement, construction, and interpretation by the laws of the state of Florida.

7. **Entire Agreement.** This Agreement constitutes the entire Agreement of the parties and may not be amended or modified except in a writing signed by both parties. All prior understandings and Agreements between the parties are merged in this Agreement, which alone fully and completely expresses their understanding.

8. **Successors.** This Agreement shall be binding on and inure to the benefit of the parties and their respective successors, assigns, and personal representatives.

ACCEPTED AND AGREED on the date first above stated.

Witnesses as to BUYER:

(Print) OJ ODUNNA
(Sign) _____

BUYER: STACY BELL

_Stacy Bell_
Stacy Bell

Witnesses to SELLER:
(Print) _____
(Sign) _____

SELLER: ANNA GRACE MAMONE

_Anna Grace Mamone_
Anna Grace Mamone

2    INITIALS Buyer _____ Seller _____

## AGREEMENT

THIS AGREEMENT, made and entered into by and between CARGO TRANSPORTATION INC., a corporation organized and operating under the Laws of the State of Florida, with its principle place of business at 100 S. Pine Island Rd Ste 112, Plantation Florida 33324 and STACEY BELL whose address is 7705 Andes Lane, Parkland, Florida 33067, (hereinafter collectively the "First party") and ANNA GRACE MAMONE an individual whose address is 1960 Augusta Terrace, Coral Springs, Florida 33071 (hereinafter the "Second party")

## RECITALS

A. The parties', STACEY BELL and ANNA GRACE MAMONE, desire to make provisions for present and future conduct of disposition of the Shares in order to prevent interference with the orderly conduct of the business of the Corporation.

B. The parties', STACEY BELL and ANNA GRACE MAMONE, as shareholders in the "Corporation," CARGO TRANSPORTATION SERVICES, INC. on or about July, 1, 2001 contracted for the sale to STACEY BELL, ANNA GRACE MAMONE'S fifty (50) percent share interest in the Corporation.

C. To date, STACEY BELL and ANNA GRACE MAMONE have operated under an Installment Purchase Agreement, which was essentially modified by subsequent conduct of Corporation and the parties' as it relates to the terms of payment for the Shares.

D. As of December 31, 2001, STACEY BELL and ANNA GRACE MAMONE agree that change in the business conditions of CARGO TRANSPORTATION INC. since January 1, 2002, necessitated a change in the business relationship between the parties.

E. By entering into this Agreement, parties acknowledge satisfaction and/or waiver of STACEY Bell's obligations created under Installment Purchase Agreement attached hereto as exhibit "A". This agreement supercedes the afore indicated Installment Purchase Agreement. Specifically, STACEY BELL paid thirty-six thousand five hundred and fifty dollars( $36,550) representing payment in full for GRACE MAMONE'S 50 % share in CARGO TRANSPORTATION, INC.

F. The "Corporation" and the First Party hereby agree to continue to make commission payments to the second party to the extent obligated.

G. This agreement is entered into for the specific purpose of amending to the extent stated and effect given, that Installment Agreement attached hereto as Exhibit "A"

Page 1 of 7

**NOW THEREFORE**, in consideration of the mutual promises and covenants made herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby further agree as follows:

**ARTICLE 1: Purpose**

The purpose of this agreement is to memorialize, outline and define in writing the contractual relationship existing by and between the parties as of January 1, 2002, particularly as it relates to the transfer of ownership interest in the "Corporation" by and between the parties. ANNA GRACE MAMONE, shall continue to serve as a Consultant and be entitled to receive monthly commissions thru the year 2011, of not less than six thousand four hundred and fifty dollars ($6450) for business operations <u>specifically pertaining to the east coast air freight division.</u>

**ARTICLE 2: Representations and Warranties of Parties.**

    **Section 2.1   Representations and Warranties of First Party**

"Corporation" hereby represents and warrants to Second Party as follows:

  (a)  Due Incorporation and Organization.   First Party is a corporation duly organized, validly existing and in good standing under the laws of the State of Florida, with all requisite corporate power and authority to carry on the Business as now being conducted, and to own, operate, lease and utilize the assets, properties and businesses of First Party, including the Business.

  (b)  Authority.   First Party by and through its officers has the legal power and authority to enter into and perform this Agreement and the transactions contemplated by this Agreement. The execution, delivery and performance of this Agreement by First Party and the transactions contemplated by this Agreement have been duly and validly approved and authorized by all necessary corporate and shareholder action of First Party.

  (c)  Absence of Conflicts and Consent Requirements.   First Party's execution and delivery of this Agreement and performance of its obligations hereunder, do not (i) conflict with or violate First Party's Articles of Incorporation or Bylaws.

    **Section 2.2 - Representations and Warranties of Second Party**

First Party "individual" hereby represents and warrants to Second Party as follows:

  (a)  Due Person.   First Party are individuals who resides in the County of Broward, State of Florida.

  (b)  Authority.   First Party has the legal power and authority to enter into, to be

### Section 2.3 - Representations and Warranties of Second Party

Second Party hereby represents and warrants to First Party as follows:

    (a)    Due Person.    Second Party are individuals who resides in the County of Broward, State of Florida.

    (b)    Authority.    Second Party has the legal power and authority to enter into, to be obligated and perform this Agreement.

## ARTICLE 3
### Miscellaneous

**Section 3.1 Amendments.** This agreement may be amended, modified or supplemented in whole or in part only by an instrument in writing executed by both Second Party and First Party.

**Section 3.2 Assignment.** The parties agree that neither this Agreement nor any rights or obligations created hereby shall be assignable by any party.

**Section 3.3 Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be considered to be an original instrument.

**Section 3.4 Expenses.** First Party and Second Party shall each bear the respective expenses incurred by them in connection with the negotiation, execution and delivery of this Agreement.

**Section 3.5 Entire Agreement.** This Agreement contains the entire agreement between Second Party and First Party and supersedes all prior arrangements or understandings with respect to the matters herein.

**Section 3.6 Descriptive Headings.** The description headings are for convenience of reference only and shall not control or affect the meaning or construction of any provision of this Agreement.

**Section 3.7 Notices.** All notices or other communications that are required or permitted hereunder shall be in writing and sufficient if delivered personally or sent by registered or certified mail, postage prepaid, addressed as stated above.

**Section 3.8 Waiver or Modification.** No change, modification, or waiver of any provision of this Agreement shall be valid or binding unless it is in writing dated after the date hereof and signed by the parties intended to be bound. No waiver of any breach, term, or condition of this Agreement by either party shall constitute a subsequent waiver of the same or any other breach, term, or condition or a continuing waiver after demand for strict compliance.

**Section 3.9 Change in Business conditions.** Notwithstanding anything to the contrary contained

**Section 3.9   Change in Business conditions.**  Notwithstanding anything to the contrary contained in this Agreement, the parties', STACY BELL and ANNA GRACE MAMONE, shall be entitled to terminate this Agreement in the event of any significant disruption or change in the business conditions/operations of CARGO TRANSPORTATION, INC. East Coast Airfreight Division.

**Section 3.10   No employment relationship intended.**  Notwithstanding anything to the contrary, this Agreement shall not be construed as creating a business relationship between the parties or otherwise subjecting this Agreement to any employment or labor laws, rules, and regulations.

**Section 3.11   Survival of Covenants, Representations, Warranties and Indemnifications.**  All covenants, representations and warranties made by any party to this Agreement shall be deemed made for the purpose of inducing the other parties to enter into this Agreement. The representations, warranties and covenants contained in this Agreement shall, except as otherwise provided in this Agreement, survive indefinitely. The covenants, presentations and warranties of both First Party and Second Party are made only to and for the benefit of the other party to this Agreement and shall not create or vest rights in other persons. Should any part, clause or provision of this Agreement be held to be void, invalid or inoperative, the parties hereby direct that such invalidity should not effect any other clause, provision or condition hereof; but the remainder of this Agreement shall be effective as though such clause, provision or condition had not been contained herein.

**Section 3.12   Controlling Law.**  This Agreement shall be governed by and construed pursuant to the laws of Florida

**Section 3.13   WAIVER OF JURY TRIAL:** FIRST PARTY AND SECOND PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTION OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE FIRST PARTY AND SECOND PARTY ENTERING INTO THIS AGREEMENT.

THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVISE OF AN ATTORNEY PRIOR TO SIGNING. Notwithstanding, the parties hereby acknowledge and agree that they have the right and have had ample opportunity to seek the advice and counsel of their own attorney in connection with this Agreement and have, in fact, consulted with an attorney of their choosing and in executing this Agreement and agreeing to the terms of this Agreement, does so freely and without coercion or otherwise.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by three authorized persons on, 2.

First Party No 1 "Individual": STACEY BELL

BY: *Stacey Bell*
   STACEY BELL

ATTEST:

BY: *Guilaine L. Sosa*
Name: Guilaine L. Sosa


STATE OF FLORIDA      )
                      SS.)
COUNTY OF BROWARD     )


I, Guilaine L. Sosa, a Notary Public for said County and State, do hereby certify that STACEY BELL, personally appeared before me this day who, being by me first duly sworn, deposes and says that he has read the foregoing instrument and that it is true and correct to the best of her knowledge and belief.

Witness my hand and official seal, this 27 day of March, 2003.

*Guilaine L. Sosa*
Notary Republic

My commission expires _____.

Guilaine L. Sosa
Commission # DD 066701
Expires Oct. 22, 2005
Bonded Thru
Atlantic Bonding Co., Inc.

First Party No. 2 "Corporation":       CARGO TRANSPORTATION INC.

BY: _____
   Beatriz Eguaras
Title: Vice President

ATTEST:

BY: _____
Name: _____
Title: _____
            [CORPORATE SEAL]


STATE OF FLORIDA     )
                     SS.)
COUNTY OF BROWARD    )


I, __MARLEN BACERIO_____, a Notary Public for said County and State, do hereby certify that Beatriz Eguaras personally appeared before me this day and stated that she is Vice President and Secretary of CARGO TRANSPORTATION INC., Florida corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its president, sealed with its corporate seal and attested by himself/herself as its Secretary.

Witness my hand and official seal, this _____ day of _____, 2002. 2000

_____
Notary Republic

My commission expires __11/18/05__.


MARLEN BACERIO
Notary Public - State of Florida
My Commission Expires Nov 18, 2005
Commission # DD065010
Bonded By National Notary Assn.

Page 6 of 7

Second Party: ANNA GRACE MAMONE.

BY: _____
       ANNA GRACE MAMONE

ATTEST:

BY: _____
Name: JASON D. SININSKY


STATE OF FLORIDA      )
                      SS.)
COUNTY OF BROWARD     )


I, JASON D SININSKY, a Notary Public for said County and State, do hereby certify that ANNA GRACE MAMONE personally appeared before me this day who, being by me first duly sworn, deposes and says that he has read the foregoing instrument and that it is true and correct to the best of his knowledge and belief.

Witness my hand and official seal, this 21 day of APRIL, 2003.

_____
Notary Republic

    Jason D. Sininsky
    MY COMMISSION # DD185435 EXPIRES
    February 12, 2007
    BONDED THRU TROY FAIN INSURANCE, INC.

My commission expires 02/07.

1349

Apr 04 03 04:39p    Beatriz Egueras           9543828084              P.1

# Cargo Transportation Services, Inc.

*Facsimile*

To:   Grace

Fm:   B

Re:   Insurance Termination

Please know that your last coverage date with both the Health plan and Dental plan through CTS is 04/30/03.

Since you are no longer an employee of Cargo Transportation, and have declined Cobra coverage, termination of benefits will be effective 05/01/03 (your last coverage date will be 04/30/03).

Do not hesitate to contact me should you have any questions.

Kind Regards,

Beatriz



# CARGO TRANSPORTATION SERVICES, INC
AN EXCLUSIVE AGENT FOR JOHN J. JERUE, BARTOW, FL 33830

October 11, 2002

To Whom It May Concern:

Cargo Transportation sent monthly checks during June 2001 through December 2001, in the amount of $6450.00 payable to Anna Grace Mamone (AGM) for the sale of Company stock in which taxes were not taken out of.

In addition, no taxes have been taken from the commission checks, in the amount of $6450.00 sent to Anna Grace Mamone (AGM) as of January 1st 2002 through the present time.

This has been left to her discretion and responsibility.

Sincerely,

Bill Guittar
Vice President
Cargo Transportation

| MIA | CORPORATE | JFK |
|---|---|---|
| 7800 N.W. 69th Street | 955 N. Nob Hill Road, #139 | JFK International Airport |
| Miami, Florida 33166 | Plantation, FL 33324 | Bldg. 88, Door #8 |
| (305) 894-1800 | (800) 894-0888 | Jamaica, NY 11430 |
| (954) 820-3604 | | (917) 225-7808 |



Tracer: 12000257 - Amt: $447.23 - 07/01/02



Tracer: 12000257 - Amt: $447.23 - 07/01/02



Tracer: 12000255 - Amt: $6,450.00 - 07/01/02

Tracer: 12000255 - Amt: $6,450.00 - 07/01/02



Tracer: 12061431 - Amt: $6,450.00 - 07/25/02



Tracer: 12061431 - Amt: $6,450.00 - 07/25/02