SEALED

Unsealed 8/14/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

COPY _____ JC
_____ D.C.

AUG -4 PM 3:10

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA - MIA

UNITED STATES OF AMERICA,    X
                             X
            PLAINTIFF,       X
                             X
    V.                       X
                             X
JOHN MAMONE,                 X
                             X
            DEFENDANT.       X
                             X
_____  X

Case No. 00-6309-Cr-Seitz
File under seal

MOTION TO AMEND AND/OR MODIFY RESTITUTION
ORDER AND INCORPORATED MEMORANDUM OF LAW


COMES NOW, JOHN MAMONE, pro-se defendant , respectfully requests this Honorable Court to Amend and/or Modify the Restitution Order of December 2, 2002 and as grounds in support thereof states as follows:

1.  On January 30, 2001 John Mamone was charged in a Superseding Indictment with violations of the Racketeer Influenced and Corrupt Organizations Statute (RICO) 18 U.S.C. § 1961 et seq. and related offenses. (D.E. 318).

2.  On August 21, 2001, John Mamone was charged in a Second Superseding Indictment. (D.E. 517).

3.  On November 19, 2001, a proposed plea agreement was sent by AUSA Diana Fernandez to David Rothman, counsel for the defendant, John Mamone. Defendant reviewed the proposed plea agreement with both of his attorneys, David Rothman and Neil Schuster. The defendant met with Mr. Schuster at the Detention



Center in Miami,Fl. sometime thereafter and discussed several proposed changes by the defendant in the government's proposed plea agreement. One of the defendant's proposed changes was his request to eliminate the fine from the government's proposed plea agreement(p2 ¶4). There was never anything mentioned about restitution in the government's proposed plea agreement.See **EXHIBIT A**

4.    On December 19, 2001, John Mamone pled guilty and the plea agreement was unsealed on January 16, 2002. (D.E. 854). When the defendant was brought to Court on this day he was not aware that a change of plea hearing was scheduled. Defendant was never notified by counsel, the Court or the government about this hearing. The defendant didn't even have his reading glasses with him so he needed his attorneys to apprise him of the contents of the plea agreement. The defendant specifically asked if the fine was eliminated and counsel responded yes. The defendant never asked about restitution because there was never any mention of restitution in the proposed plea agreement to begin with.

The defendant was shocked and surprised when he heard the Judge read the plea agreement and said that restitution would be required.(p23 ¶18). The defendant questioned his attorneys. Schuster told the defendant not to worry about the restitution because he had no money to pay it anyway and that the government would not go after his wife for it. Rothman told the defendant that he didn't realize that the restitution was not in the proposed plea agreement but that the defendant wouldn't be responsible to

pay back all the restitution back. The restitution amount was being used to determine the defendant's sentence calculation and this would make the defendant a better witness for the government. The defendant was very upset with Rothman and told him the next day that he let the government get over on him by slipping in the restitution without his knowledge.

During the change of plea hearing the Judge asked the government if they had an estimate of what restitution will be?(p.23 ¶23). AUSA McCormick responded, "a ballpark estimate would be 4 to 5 million dollars. We don't have the exact figures at this particular time. It could be lower than that, though. That may be high because I think I am including all the money laundering and some won't require restitution".(p.23 ¶25, P.24 ¶1). (D.E. 793).

5.   On September 10, 2001, John Mamone was sentenced to 115 months incarceration. The court deferred the restitution and scheduled a hearing for November 22, 2002. (D.E. 1146).

6.   On October 24, 2002, John Mamone filed a Notice of Appeal. (D.E. 1167).

7.   On November 20, 2002, counsel for the defendant received from the government, via fasimile, a thirty-five (35) page submission styled "GOVERNMENT MOTION CONCERNING RESTITUTION AND PROPOSED REPAYMENT SCHEDULE". (D.E. 1199).

8.   On On November 21, 2002 counsel for the defendant filed an Emergency Motion to Continue the Restitution Hearing. (D.E. 1203).

9. On November 21, 2002 the government filed a Supplemental Motion Concerning Restitution and Response to Defendant's Emergency Motion for Continuance. (D.E. 1205).

10. On November 21, 2002 the Judge denied Motion to Continue Restitution Hearing as to John Mamone.(D.E. 1204).

11. On November 22, and November 26, 2002 the Restitution Hearing was conducted.(D.E. 1207, 1209). The transcripts of the Restitution Hearing were filed on December 9, 2002. (D.E. 1213, 1214).

12. On December 2, 2002 the Judgement of Restitution was entered as to John Mamone. (D.E. 1210).

13. On December 5, 2002 Motion by John Mamone was entered for David Rothman and Neil Schuster to Withdraw as Attorney, Declare the Defendant Indigent and For Appointment of Counsel For the Purpose of Appeal. (D.E. 1212).

14. On December 12, 2002 order was entered as to John Mamone Motion for David Rothman and Neil Schuster to Withdraw as Attorney, referred to Magistrate Ted E. Bandstra, Motion for Appointment of Counsel For the Purpose of Appeal, granting motion to Extend Time to File Notice of Appeal, denying Motion to Proceed In Forma Pauperis Appeal. (D.E. 1218).

15. On January 2, 2003 John Mamone filed a Consolidated Notice of Appeal. (D.E. 1228).

16. On January 16, 2003, Magistrate Ted E. Bandstra conducted a Motion Hearing for David Rothman and Neil Schuster to withdraw as attorney and Motion for Appointment of Counsel for purpose

-4-

of Appeal. John Mamone was declared indigent and was appointed counsel, Michael B. Cohen for the purpose of appeal and both counsels Rothman and Schuster were relieved of their duty to represent John Mamone and received permission to withdraw.

In May 2003, Michael B. Cohen filed a brief pursuant to Anders v. Cal.,386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) on behalf of the defendant, seeking permission to withdraw as counsel and have this appeal dismissed. Counsel argued that, I. Since the Defendant knowingly and voluntarily waived his right to appeal his sentence, both in his Plea Agreement and at the time of his Rule 11 inquiry, pursuant to Anders v. California, supra, undersigned counsel has no basis to reach any of the Defendant's sentencing issues before this Court. As, such, the Court must dismiss Appellant's appeal with prejudice and permit counsel to withdraw. II. The Appellant's appeal waiver foreclosed his right to appeal his restitution order based upon an Evidentiary Hearing conducted by the Court, without any apparent error.[1]

18. On January 23, 2004 the Eleventh Circuit affirmed John Mamone's sentence and the mandate was filed on February

---

[1] Counsel was ineffective for failing to appeal restitution order on Direct Appeal. The restitution order should have been addressed on Direct Appeal not withstanding the appeal waiver because it was ordered in violation of law and therefore imposed illegaly. Plea agreement's waiver of appeal rights did not bar the defendant's appeal of restitution on grounds that District Court erred by not setting off the money forfeited by defendant or his codefendants, since defendant asserts a violation of Statute governing the imposition of restitution.United States v. Johnston,199 F. 3d. 1015, 1022 (9th Cir. 1999);United States v. Ready, 82 F. 3d 551 (2nd Cir. 1996). Additionally,if the sentencing Judge acted beyond her Statutory powers in passing sentence (without jurisdiction), including restitution orders, then the sentence is illegal and the terms of the plea agreement

26, 2004. (D.E. 1515).

19. On January 24, 2005 Richard L. Rosenbaum,Esq. filed a Motion pursuant to Title 28 U.S.C.Section 2255 on behalf of John Mamone. Counsel filed his Memorandum of Law on June 27, 2005.(D.E. 11 in Case No. 05-CIV-SEITZ/MACALILEY).

20. Subsequently, the government responded to the Section 2255 Petition on October 11, 2005 but was not received by counsel until December 5, 2005.

21. The defendant was not aware until May 5, 2006 when he spoke to counsel Richard Rosenbaum, that the restitution could not be addressed on collateral attack via a 2255 Petition.

22. On June 28, 2006, John Mamone filed an Emergency Motion for Leave to File a Supplemental Amended Motion and Memorandum of Law Pursuant to Title 28 Section 2255. Defendant's Petition is still pending in this Court.

23. Defendant contests the Restitution Order on its face and as to the amount.

24. John Mamone contends that the Court failed to comply with Title 18 U.S.C. Section 3363(e)(1) and Section 3664 when

---

cannot serve to relinquish Appellant's right to appeal.U.S.v. Cobbs, 967 F.2d 1555, 1557-58 (11th Cir. 1992); U.S. v. Young, 953 F. 2d 1288 (11th Cir. 1992); U.S. v. Catherine,55 F. 3d 1462 (9th Cir. 1995). Although a restitution appeal will not be forclosed by an appeal waiver provision in a Plea Agreement, even in light of a clear Rule 11 inquiry, a defendant may none-theless appeal a Restitution Order if the Court failed to follow the strictures of Title 18 Sections 3663 and 3664. United States v. Gamma Tech, 265 F.3d 917 (9th Cir. 2001); United States v. Philips, 174 F.3d 1074 (9th Cir. 1999).

it imposed restitution in the amount of $4,302,899.71. Thus, when a District court exceeds its authority in the order of restitution, then the sentence becomes illegal[2] U.S v. Cobbs, supra, 967 F.2d at 1557-58; U.S. v. Savely, 814 F.Supp. 1519 (D. Kan.1993),reconsideration granted. 827 F. Supp. 668.

Title 18 U.S.C. § 3663(e)(1), states:

> The Court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that the Court may, in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation. An order of restitution shall require that all restitution to victims under such order be made before any restitution to any person under such order is made.

Title 18 U.S.C.§ 3664(e), states:

> Any dispute as to the proper amount or type of restitution shall be resolved by the Court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as the result of the offense

---

[2]Although defendant agreed to restitution in the plea agreement, that fact did not give the Court authority to order restitution beyond that otherwise allowed. "Parties to a plea agreement cannot increase the statutory powers of the sentencing Judge to authorize restitution simply by stipulating to restitution beyond that allowed under the relevant version of the Act".U.S. v. Young, supra, 953 F.2d at 1290. Relevant version of the Victim and Witness Protection Act (the Act),is determined by the date of sentencing. Blaik v. U.S., 117 F.3d 1288 (11th Cir. 1997).

shall be on the attorney for
the Government. The burden of
demonstrating the financial
resources of the defendant and
the financial needs of the
defendant's dependents, shall
be on the defendant. The burden
of demonstrating such other
matters as the Court deems
appropriate shall be upon the
party designated by the Court
as justice requires.

The defendant was ordered to pay restitution in the amount
of $4,302,899.71 as follows:

$1,845,451 to the Alliance Trust/Chemical Trust Victims

$700,000.00 to the "Rubbo Victims"

$1,757,438.17 to the"Forex Victims"

The Alliance Trust/Chemical Trust and Rubbo Victims will
be Defendant Mamone's sole responsibility; Defendant Mamone
will be liable joinly and severally with Co-defendant, Joseph
Spitaleri, to the Forex Victims.

The $1,845,451 restitution for the Alliance Trust/ Chemical
Trust were two seperate offenses. The first offense was in
the Second Superseding Indictment, Count 15. See EXHIBIT B
The defendant was charged with attempting to cash 21 specific
checks totaling $1,046,451. Fred Morgenstern was also charged
for this offense. The government misled the Court when they
said that these checks were returned to Fred Morgenstern by
the defendant uncashed , but were ultimately negotiated for
cash by the Morgensterns or their associates.(p.48 ¶20 D.E. 793)
The government never had any proof that these checks were
ever cashed and failed to provide proof at the restitution

hearing that there were any victims of this offense. It was very clear that there were 21 specific checks with 21 alleged identifiable victims. The government admitted at the restitution hearing that they did not have the checks and thought that about half were eventually cashed. The government did not meet its burden under Title 18 U.S.C. § 3664(e), by offering evidence that the checks were ever cashed and that there were ever any victims as a result of the checks being cashed.

Where there are no victims and, consequently, no sustained victim loss, the Court was without authority to order restitution. Hughey v. U.S.,495 U.S. 411, 110 S. Ct. 1979, 109 L. Ed. 408 (1990); U.S. v. Siegel, 153 F.3d 1256, 1258 (11th Cir. 1998); U.S. v. Patty, 992 F. 2d 1045 (10th Cir. 1993); U.S.v. Meachman, 27 F. 3d 214 (6th Cir. 1994), opinion on remand 95 F. 3d 1153, Cert. Den. 519 U.S. 1017;U.S. v. Johnston, 199 F. 3d 1015,1022 (9thCir.1999).

Even if restitution was properly ordered for this offense the defendant should have been ordered to pay it jointly and severally with codefendant Fred Morgenstern.  The restitution order should be reduced by the $1,046,451 the defendant was ordered to pay in violation of law.

The second offense  for which the defendant was ordered to pay restitution to the Alliance Trust/Chemical Trust victims were in Counts 46,47, 48,49,50,52,54and 55. See EXHIBIT C· The defendant claims that the Court violated Title 18 U.S.C. 3663(e)(1) when it imposed restitution in the amount of approx- imately $800,000 solely by the defendant to pay the victims

of the Alliance Trust/Chemical Trust fraud. The Court was
required, under Witness Protection Act, to determine whether
victims of defendant's telemarketing fraud had received or
were to receive compensation from other sources before money
forfeited from defendant could not be offset against his
restitution obligation; Court was obligated to inquire into
all possible sources of restitution, including moneys forfeited
to the government and those paid in restitution by codefendants.
U.S. v. Johnston 199 F. 3d 1015, 1022, 1023 (9th Cir. 1999).

The defendant was charged in Counts 46-47 along with
codefendant Fred Morgenstern. This represents $313,287.47 and
$50,000 of the Alliance Trust/Chemical Trust Funds. The defendant
was charged in Counts 48-49 along with codefendants Fred Morg-
enstern and Mark Carattini. This represents $50,000 and $70,000
of Alliance Trust/Chemical Trust funds. The defendant was charged
in Counts 50 and 52 along with codefendants Fred Morgenstern,
Joseph Russo and Doreen Russo. This represents $100,000 and
$30,000 of the Alliance Trust/Chemical Trust funds. The defendant
was charged in Counts 54-55 along with codefendants Fred Morgen-
stern and David Bell. This represents $100,000 and $75,000 of
the Alliance Trust/Chemical Trust funds.This all represents
approximately $800,000 that the defendant was ordered to pay
in restitution solely which should have been joint and several.

The court ordered the defendant to pay full restitution
without considering what his codefendants paid back or were
ordered to pay back in violation of law.

Fred Morgenstern agreed to the entry of a forfeiture
order (jointly and severally with Virgil womack and other
coconspirators in this case) in the amount of $31,273,273.58.
The United States agrees that Fred Morgenstern shall receive
credit against the judgement amount for the repatration of
$17,769.346.22 transferred from Barclays Bank London, Endland,
Account #63772677 in the name of"Falcon Trust Co. LTD".
(p.4 ¶9 D.E. 995).

David Bell agreed to the entry of forfeiture and restitution
orders in the amount of $475,000.($175,000 for the Victims of
Alliance Trust/Chemical Trust fraud related to Counts 54 and
55 and $300,000 for the "Rubbo Victims".(p.3 ¶8 D.E. 856).

Joseph Russo and Doreen Russo agreed to the entry of a
forfeiture order/restitution order in the amount of $130,000
as related to Counts 50 and 52. (p.2 ¶6 D.E. 897 and p.2 ¶5
D.E. 899).

To defendant's knowledge, codefendant Mark Carattini was
the only one not ordered to pay back restitution, although
he was a coconspirator in Counts 48 and 49 with John Mamone
and Fred Morgenstern. John Mamone gave Mark Carattini $120,000.
(D.E. 878).

The Court acted beyond the scope of its authority in
ordering restitution by the defendant which, when added to
that either paid or being repaid by his codefendants, totals
amounts greater than the actual loss proven by a preponderance
of the evidence. U.S.v. Page 69 F. 3d at 494 (11th Cir. 1995);

U.S v. Arutunoff, 1F. 3d 1112 (10th Cir. 1993), cert. den.
510 U.S. 1017.

The only restitution that remains unpaid from the
$800,000 the Court ordered the defendant to pay to the
Alliance Trust/Chemical Trust victims is the $70,000 and
$50,000 in Counts 48 and 49. Therefore if the defendant
is responsible for any restitution as related to the $800,000
to the Alliance Trust/Chemical Trust victims it should be for
$120,000 which John Mamone should be responsible for jointly
and severally with codefendants Mark Carattini and Fred Morgenstern.

25. John Mamone alleges that Booker/Blakely/Apprendi error
occurred when the Court used conduct unrelated to John Mamone's
admitted conduct and ordered an improper restitution award. The
Eleventh circuit notes, the Supreme Court has not addressed whether
Blakely and Booker apply to restitution orders. U.S. v. King,
414 3d 1329 (11th Cir. 2005).

John Mamone was ordered to pay $700,000 to the victims.
of the Rubbo fraud. John Mamone was never indicted for this
fraud and never admitted to the 1 million dollars. The Rubbo
case was a seperate indictment. See Exhibit D.

David Bell agreed to pay $300,000 in restitution to the
victims of the Rubbo fraud. John Mamone was ordered to pay $700,000.
The Rubbo case involved multi-defendants  who are responsible
for restitution. John Mamone only received a portion of the
proceeds from David Bell and never from any of the other defendants
in the Rubbo case. The Rubbo fraud was calculated at 1 million
dollars. The Court ordered David Bell, the organizer  of this

fraud, to pay back only $300,000 and Mamone was ordered to pay back $700,000. John Mamone only received money from David Bell and no one else . David Bell hired the salesmen who worked for the Rubbos. The Rubbos received the $700,000 not the defendant. If John Mamone is responsible for restitution to the victims of the Rubbo fraud it should only be for the $300,000 with David Bell jointly and severally. Since David Bell has agreed to pay back the full amount of the $300,000 the defendant should not be responsible for any restitution to the Rubbo victims. The fact that Mamone was partnered with David Bell and never received any portion of the $700,000,this money went to the Rubbo Family, how could the defendant be held liable for $700,000 he never received or participated in.

John Mamone was never charged in the Forex Fraud. John Mamone never admitted to this fraud except as he was charged in the indictment as to Counts 8,9 and 10. See EXHIBIT E The defendant was ordered to pay restitution to the victims of the Forex Fraud jointly and severally with Joe Spitaleri for $1,757,438.17. Despite the fact that the defendant sold his check cashing store to Fred Morgenstern on July 1, 1999, Morgenstern was never charged in the Forex conspiracy and the defendants restitution order includes monies which supposedly changed hands after July 1, 1999. The restitution order should be vacated as to the amount of $1,757,438.17 and correctly ordered to be $80,000 as charged in Counts 8, 9 and 10 of this indictment. John Mamone and Joe Spitaleri should be jointly and severally responsible for this amount.

26. John Mamone asserts that the Court committed "plain error" when it ordered the defendant to pay restitution for which there were no victims and/or which had either been paid or is in the process of being repaid by the codefendants. The court erred in ordering the amount of restitution that the defendant is responsible for in the Forex Fraud and the Rubbo Fraud. The defendant was never indicted for these frauds. An illegal sentence is reviewed for plain error. U.S. v. Cobbs, supra, 967 F. 2d at 1558. A District Court's factual findings are reviewed for clear error. U.S.v. Sanders, 95 F.3d 449.451 (6th Cir. 1996); U.S. v. Reed, 80 F.3d at 1421.

The court committed plain error when it ordered John Mamone to pay portions of the restitution solely when it should have been joint and several. The court committed error when it ordered John Mamone to pay restitution for uncashed checks without any proof of loss from the government. U.S v. McCord, 166, U.S. APP. D.C. 1, 501 F. 2d 334,341.

27. John Mamone contends that the restitution ordered by Court was in violation of law and resentencing is required to amend and/or modify the restitution order imposed on the defendant.

Wherefore,based on the foregoing grounds and authority, John Mamone, respectfully requests this Honorable Court  to amend and/or modify the Restitution Order.


I declare under penalty of perjury that the above information is true and correct.


Respectfully submitted this _1_ day of _August_ ,2006.


BY: _John Mamone, pro-se_
   John Mamone 07803-062, pro-se
   Inmate Monitoring Section
   Bureau of Prisons
   320 First Street, N.W.
   Room 524
   Washington, D.C. 20534

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the within and foregoing

motion has been forwarded by first class mail to:


AUSA J. Brian McCormick
      United States Attorney Office
      Southern District of Florida
      500 E. Broward Blvd.
      Suite 700
      Ft. Lauderdale, Fl. 33394




Respectfully submitted this _1_ day of _August_ , 2006.


BY: _Johnm, pro se_ _____
      John Mamone 07803-062
      Bureau of Prisons
      Inmate Monitoring Section
      320 First Street, N.W.
      Room 524
      Washington, D.C. 20534

<u>EXHIBIT A</u>

Government's proposed plea agreement
and fax cover sheet dated 11/19/01

NOV 19 '01 02:36PM                                                                                                    P.1



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Florida*

---

*500 East Broward Boulevard, Suite 700*
*Fort Lauderdale, FL 33394-3002*
*(954) 356-7255*

## FACSIMILE TRANSMISSION

FROM: ___DIANA LW FERNANDEZ___

**ASSISTANT UNITED STATES ATTORNEY**

TO: ___DAVID ROTHMAN___

Fax No.: ___(305) 374-5747___    Telephone No.: ___(305) 358-9500___

*Transmission Date:* ___11/19/01___

*Number of Pages (Including this page):* ___9___

*IF NOT PROPERLY RECEIVED, CALL THE SENDING INDIVIDUAL.*
This facsimile contains **PRIVILEGED AND CONFIDENTIAL INFORMATION** intended only for the use of the Addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

*MESSAGE CONTENTS:*

---

David –
  Enclosed is the proposed plea agreement.
Call me today or Brian tomorrow.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ(S)(S)

UNITED STATES OF AMERICA,

　　　　Plaintiff,

-vs-

JOHN MAMONE,

　　　　Defendant.
_____/

### PLEA AGREEMENT

The United States of America and JOHN MAMONE (hereinafter referred to as the "defendant") enter into the following agreement:

1.　The defendant agrees to plead guilty to Count 1 of the second superseding indictment, which count charges the defendant with RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d).

2.　The United States agrees to seek dismissal of the remaining counts of the second superseding indictment, as to this defendant, after sentencing.

3.　The defendant is aware that the sentence will be imposed in conformity with the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that the applicable guidelines will be determined by the Court relying in part on the results of a Pre-Sentence Investigation by the Court's probation office, which investigation will commence after the

guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the applicable guideline range and impose a sentence that is either more severe or less severe than the guidelines range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to twenty years, followed by a term of supervised release of up to three years. In addition to a term of imprisonment and supervised release of up to three years, the Court may impose a fine of up to $250,000.

5. The defendant further understands and acknowledged that, in addition to any sentence imposed under paragraph 4 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information

2

concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7.   The United States agrees that it will recommend at sentencing that the Court reduce by three levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.   The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range, as that range is determined by the Court. However, the United States will not be required to make this sentencing recommendation if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

3

8.   The United States agrees that it will not recommend an upward departure from the guidelines as determined by the Court based upon the nature of the offense, the defendant's relevant offense conduct, or the background of the defendant.

9.   The defendant agrees that he shall cooperate fully with this Office by:

(a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; and,

(b)  appearing  at  such  grand  jury  proceedings,  hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office.

10.  This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the Court at the time of sentencing.  If in the sole and unreviewable judgment of this Office  the  defendant's  cooperation  is  of  such  quality  and significance to the investigation or prosecution of other criminal matters  as  to  warrant  the  Court's  downward  departure  from  the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent  to  sentencing,  reflecting  that  the  defendant  has

4

provided  substantial  assistance  and  recommending  sentence
reduction.  The defendant acknowledges and agrees, however, that
nothing in this Agreement may be construed to require this Office
to file such a motion and that this Office's assessment of the
nature, value, truthfulness, completeness, and accuracy of the
defendant's cooperation shall be binding on the defendant.

11.  The defendant understands and acknowledges that the Court
is under no obligation to grant a government motion pursuant to
Title 18, United States Code, Section 3553(e), 5K1.1 of the
Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal
Procedure, as referred to in paragraph 10 of this agreement, should
the government exercise its discretion to file such a motion.

12.  The defendant is aware that Title 18, United States Code,
Section 3742 affords the defendant the right to appeal the sentence
imposed in this case.  Acknowledging this, in exchange for the
undertakings made by the United States in this plea agreement, the
defendant hereby waives all rights conferred by Title 18, United
States Code, Section 3742 to appeal any sentence imposed, including
any restitution order, or to appeal the manner in which that
sentence was determined, unless (1) the sentence exceeds the
maximum permitted by statute, (2) the sentence is the result of an
upward departure from the guideline range the court establishes at
sentencing, and/or (3) the Court decides not to follow one or more
of the sentencing recommendations made pursuant to paragraph 8

5

above.   The defendant further understands that nothing in this

agreement shall affect the government's right and/or duty to appeal

as set forth in 18 U.S.C. § 3742(b).  However, if the United States

appeals the defendant's sentence pursuant to Section 3742(b), the

defendant shall be released from the above waiver of appellate

rights.   The defendant understands that, although the defendant

will be sentenced in conformity with the Sentencing Guidelines, by

this agreement the defendant waives the right to appeal the

sentence on the basis that the sentence is the result of an

incorrect application of the Sentencing Guidelines.

   13.   The United States and the defendant agree that, although

not binding on the probation office or the Court, they will jointly

recommend that the Court make the following findings and

conclusions as to the sentence to be imposed: *amount of loss is [illegible] to*

   Role in the Offense: That the defendant should receive a four-

level increase as an organizer and leader of criminal activity that

involved five or more participants, pursuant to Section 3B1.1 of

the Sentencing Guidelines.

   14.   The defendant is aware that the sentence has not yet been

determined by the Court.  The  defendant also is aware that any

estimate of  the  probable sentencing range or sentence that the

defendant may receive, whether that estimate comes from the

defendant's attorney, the government, or the probation office, is

a prediction, not a promise, and is not binding on the government,

the probation office or the Court. The defendant understands further that any recommendation that the government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

15.  This is the entire agreement and understanding between the United States and the defendant.   There are no other agreements, promises, representations, or understandings.

GUY A. LEWIS
UNITED STATES ATTORNEY

Date: _____          _____
                               J. BRIAN McCORMICK
                               ASSISTANT UNITED STATES ATTORNEY

Date: _____          _____
                               DIANA L.W. FERNANDEZ
                               ASSISTANT UNITED STATES ATTORNEY

Date: _____          _____
                               JOHN MAMONE
                               DEFENDANT

Date: _____          _____
                               DAVID ROTHMAN
                               ATTORNEY FOR DEFENDANT

8

EXHIBIT B

Second Superseding Indictment Count 15

Section 1341, and wire fraud in violation of Title 18, United States Code, Section 1343, which property was obtained from a South Carolina based investment fraud.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 15

1. On or about September 21, 1999, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN,

and other persons did knowingly engage and attempt to engage in a monetary transaction by, through and to a financial institution affecting interstate and foreign commerce in criminally derived property of a value greater than $10,000, that is the exchange of twenty-one monetary instruments in the amount of approximately $1,046,451, such property having been derived from specified unlawful activities, that is, mail fraud in violation of Title 18, United States Code, Section 1341 and wire fraud in violation of Title 18, United States Code, Section 1343, which property was obtained from a South Carolina based investment fraud.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 16 - 45

1. On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

24

<u>EXHIBIT C</u>

Second Superseding Indictment
Counts 46,47,48,49,50,52,54 and 55.

<u>COUNTS 46 - 47</u>

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was from a South Carolina based investment fraud.

| <u>COUNT</u> | <u>DATE</u> | <u>AMOUNT</u> | <u>FINANCIAL TRANSACTION</u> |
|---|---|---|---|
| 46 | December 21, 1999 | $313,284.47 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 0020012751 at Peninsula Bank in the name of Gold Coast Check Cashing |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|---|---|---|---|
| 47 | December 23, 1999 | $50,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 0020012751 at Peninsula Bank in the name of Gold Coast Check Cashing |

All violation of Title 18, United States Code, Sections 1957 and 2.

### COUNTS 48 - 49

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN,
MARK CARATTINI,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18,

United States Code, Section 1343, which property was from a South Carolina based investment fraud.

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|----------------------|
| 48 | December 21, 1999 | $50,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 0055226706 at Bank Atlantic in the name of Premier Tickets, Inc. |
| 49 | January 19, 2000 | $70,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07A02 titled J. M. & Sons Enterprises, Inc. into account number 0055226706 at Bank Atlantic in the name of Premier Tickets, Inc. |

All violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 50 - 53

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
JOSEPH RUSSO,
FRED MORGENSTERN,
DOREEN RUSSO,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each

31

transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was from a South Carolina based investment fraud.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| 50 | January 12, 2000 | $100,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07998 titled Check Cashing Unlimited into account number 1090007136287 at First Union Bank in the name of DOREEN RUSSO |
| 51 | January 12, 2000 | $100,000.00 | Negotiation of check payable to Linda DiCamillo from the account of DOREEN RUSSO at First Union Bank |
| 52 | April 10, 2000 | $30,000.00 | Negotiation of check from a Merrill Lynch account of J.M. & Son Enterprises, Inc. payable to DOREEN RUSSO |
| 53 | October 10, 2000 | $142,000.00 | Deposit of check payable to DOREEN RUSSO into account of DOREEN RUSSO at First Union National Bank |

All violation of Title 18, United States Code, Sections 1957 and 2.

## COUNTS 54 - 55

1.   On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

JOHN MAMONE,
FRED MORGENSTERN,
DAVID BELL,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, which property was from a South Carolina based investment fraud.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 54 | February 3, 2000 | $100,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07A02 titled J. M. & Sons Enterprises, Inc. into account number 55971657 at Bank Atlantic in the name of Gateway Transportation. |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 55 | February 10, 2000 | $75,000.00 | Wire transfer of Chemical Trust funds from Merrill Lynch account number 735-07A02 titled J. M. & Sons Enterprises, Inc. into account number 55971657 at Bank Atlantic in the name of Gateway Transportation. |

All violation of Title 18, United States Code, Sections 1957 and 2.

### FORFEITURE

1. Count 1 of this Indictment is realleged and hereby incorporated herein by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 1963.

Through the pattern of racketeering activity, defendants

JOHN MAMONE,
JOSEPH RUSSO,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
MICHAEL BUCCINNA,
DAVID BELL,
JOHN O'SULLIVAN,
MARK CARATTINI,
ANSON KLINGER, and
MARK WEISS,

i. acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii. an interest in, security of, claims against, and property and contractual rights which afford a source of influence over the enterprise named and described herein which they established, operated, controlled, conducted, and participated in the conduct

34

EXHIBIT D

Rubbo Indictment



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

# NO. 02-60049 CR-HURLEY

18 U.S.C. 1962(d)
18 U.S.C. 1963
18 U.S.C. 1957
18 U.S.C. 1956
18 U.S.C. 1955
18 U.S.C. 1511
18 U.S.C. 1343
18 U.S.C. 1341
18 U.S.C. 922(g)(1)
18 U.S.C. 924(a)(2)
18 U.S.C. 894
18 U.S.C. 892
18 U.S.C. 371
18 U.S.C. 2

MAGISTRATE JUDGE
VITUNAC

FILED BY:
2002 MAR 12 PM 4:00
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FTL.

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANTHONY A. GRAZIANO, | ) |
| aka "T.G.," aka "The Little Guy," | ) |
| JOHN CHARLES ZANCOCCHIO, aka "Porky," | ) |
| ISRAEL FRANCIS TORRES, aka "Buddy," | ) |
| ANTHONY NICHOLAS TORRES, aka "Ant," | ) |
| NANCY ANNA SOUHRADA, | ) |
| FREDERICK MICHAEL SCAROLA, | ) |
| aka "Freddy," | ) |
| JOSE RAUL PEREZ, aka "Baldy," | ) |
| ANIBAL PEREZ, | ) |
| JUAN ANDRES PEREZ, | ) |
| JOSE MARIA SANCHEZ, | ) |
| STEVEN JULIO BATISTA, | ) |
| CHARLES PATRICK CLAY, | ) |
| ANGELA ANN RUBBO, aka "Angie," | ) |
| JOSEPH ANTHONY RUBBO, | ) |

NICHOLAS DINO RUBBO, aka "Nick," )
PASQUALE ANTHONY RUBBO, aka "Patsy," )
GENO EDWARD PARISI, aka "Carmine," )
JOHN J. FINKELSTEIN, aka "Fink," )
JEFFREY FERDINAND BLOCK, )
JOSEPH JOHN LAFRATTA, )
DAVID NEAL CAVALLO, aka "Little Dave," )
RONALD JOSEPH BURTON, )
LAZAR ALBERT KAUDERER, )
NICHOLAS G. PASSALACQUA, )
CARLO PIRANEO, )
BLAIR PHILLIPS FITZGIBBON, )
BRIAN SCOTT DARROW, )
ROLAND JOSEPH TALLO, aka "Rolando," and )
MICHAEL FRANK MONDELLI, )
)
        Defendants. )
)

## INDICTMENT

The Grand Jury charges that:

## COUNT 1
(RICO Conspiracy, 18 U.S.C. 1962(d))

### Introduction

At all times relevant to this Indictment:

1.      The members and associates of the **Bonanno Organized Crime Family** of La Cosa Nostra (hereinafter referred to as the "**Bonanno Family**") were an organized criminal group that operated in the Southern District of Florida, New York, and elsewhere.

2.      The Bonanno Family operated through groups of individuals referred to as "crews" and "regimes." These crews were headed by persons referred to as "captains," "capos," "caporegimes," and "skippers." These crews consisted of "soldiers," that is, persons who had been formally inducted into the Bonanno Family and who are also referred to as "made members." The

2

<u>EXHIBIT E</u>

Second Superseding Indictment
Counts 8,9 and 10

## COUNT 8 - 10

1.    On or about the dates enumerated as to each of these
Counts of the Indictment, in the Southern District of Florida and
elsewhere, the defendant,

JOHN MAMONE,

and other persons did knowingly engage and attempt to engage and
did aid and abet, counsel, command, induce, and procure and cause
the engaging and attempts to engage in the following monetary
transactions in various amounts, as described below, each
transaction occurring on or about the date indicated and
constituting a separate count of the Indictment, by, through and to
a financial institution, affecting interstate and foreign commerce,
in criminally derived property of a value greater than $10,000,
that is, the deposit, withdrawal, and transfer of funds, such
property having been derived from specified unlawful activity,
specifically, mail fraud, in violation of Title 18, United States
Code, Section 1341, and wire fraud, in violation of Title 18,
United States Code, Section 1343, which property was from a foreign
currency exchange fraud.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 8 | November 10, 1999 | $30,000.00 | Negotiation at Akel's Market of check Number #002567209, payable to International Mercantile Corp. drawn on account at the Huntington Bank. |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| 9 | November 10, 1999 | $20,000.00 | Negotiation at Akel's Market of check Number #002567210 payable to International Mercantile Corp. drawn on account at the Huntington Bank. |
| 10 | November 17, 1999 | $30,000.00 | Negotiation at Akel's Market of check Number #002567221, payable to International Mercantile Corp. drawn on Account at Huntington Bank. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

### COUNTS 11 - 13

1.   On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida and elsewhere, the defendant,

JOHN MAMONE,

and other persons did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States

21

```
 [docket  ]                      CIVIL/CRIMINAL                    [vdkttext]
4. Queries                          Docketing


 Docket #   : 0:00-cr-6309                                          BLG
 Short Title: USA              v. Raffa                  CLOSED
 Type: cr         Judge: Seitz              Magistrate:
 ---------------------------------------------------------------------

 ---------------------------------------------------------------------
              Summary of Event that Created the Document

 Filed        Entry Date   Last Update        History ID      Docketed by
 8/4/06        8/7/06      **/**/**            7407287         dg
     +------------------------------------------------------------+
      SEALED DOCUMENT



     +viewing docket text-----------------------------------------+
Transaction: kseal doc -/ -/ - - -

 Command mode (? for commands)
```

Attached to D.E. # 1600