01/04/2007 10:34 FAX ☒002
Case 0:00-cr-06309-PAS Document 1610-2 Entered on FLSD Docket 01/04/2007 Page 1 of 12
United States Mutual Legal Assistance Treaty With the Bahamas 100-17 Page 1 of 12



# States Mutual Legal Assistance Treaty With the Bahamas 100-17

August 18, 1987

## TREATY WITH THE BAHAMAS ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS

TREATY DOC. 100-17

June 12, 1987, Date-Signed; August 18, 1987, Date-Signed

STATUS:

[*1] PENDING: April 13, 1988. Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

MESSAGE FROM THE PRESIDENT OF THE UNITED STATES

TRANSMITTING THE TREATY BETWEEN THE UNITED STATES OF AMERICA AND THE COMMONWEALTH OF THE BAHAMAS ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS, SIGNED AT NASSAU ON JUNE 12 AND AUGUST 18, 1987, WITH RELATED NOTES

TEXT:
100TH CONGRESS

SENATE

LETTER OF TRANSMITTAL

The White House, April 13, 1988.
To the Senate of the United States:

With a view to receiving the advice and consent of the Senate to ratification, I transmit herewith the Treaty between the Government of the United States of America and the Government of the Republic of Argentina on Mutual Legal Assistance in Criminal Matters, signed at Buenos Aires on December 4, 1990. I transmit also, for the information of the Senate, the Report of the Department of State with respect to the Treaty.

The Treaty is one of a series of modern mutual legal assistance treaties being negotiated by the United States in order to counter criminal activities more effectively. The Treaty should [*2] be an effective tool to assist in the prosecution of a wide variety of modern criminals, including members of drug cartels, "white collar criminals," and terrorists. The Treaty is self-executing.

The Treaty provides for a broad range of cooperation in criminal matters. Mutual assistance available under the Treaty includes: (1) the taking of testimony or statements of witnesses; (2) the provision of

documents, records, and evidence; (3) the execution of requests for searches and seizures; (4) the serving of documents; and (5) the provision of assistance in locating, tracing, immobilizing, seizing and forfeiting proceeds of crime, and restitution to the victims of crime.

I recommend that the Senate give early and favorable consideration to the Treaty and give its advice and consent to ratification.

GEORGE BUSH.

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,

Washington, DC, October 17, 1991.

The PRESIDENT,
The White House.

THE PRESIDENT: I have the honor to submit to you the Treaty between the Government of the United States of America and the Government of the Republic of Argentina on Mutual Legal Assistance in Criminal Matters (the "Treaty"), signed at Buenos Aires on December [*3] 4, 1990. I recommend that the Treaty be transmitted to the Senate for its advice and consent to ratification.

The Treaty covers mutual legal assistance in criminal matters. In recent years, similar bilateral treaties have entered into force with the Bahamas, Canada, Italy, Mexico, the Netherlands, Switzerland, Turkey and the United Kingdom concerning the Cayman Islands; and others have been concluded and ratified by the United States (but have not yet entered into force) with Belgium, Colombia, Morocco, and Thailand; or have been concluded and signed with Jamaica, Nigeria, Panama, Spain and Uruguay. The Treaty contains many provisions similar to those in the other treaties.

The Treaty is designed to be self-executing and will not require implementing legislation.

Article 1 requires mutual assistance in the prevention, investigation, and prosecution of crime and in all related proceedings, whether criminal, civil or administrative. This would include, for example, cooperation in proceedings, which may be civil in nature, to forfeit the proceeds of drug trafficking. There is no double criminality requirement for cooperation under the Treaty; a Requested State is required to execute [*4] a request without regard to whether the subject matter would constitute an offense under its own laws. Assistance under the Treaty will include: provision of documents, records and evidence; executing requests for searches and seizures; immobilizing assets; assisting in proceedings relating to forfeiture, restitution and collection of fines; obtaining witness testimony; and other forms of assistance. The article explicitly states that it is not intended to create rights in private parties to obtain, suppress, or exclude any evidence, or to impede the execution of any request under the Treaty.

Article 2 defines the Central Authorities for purposes of the Treaty. For the United States, the Central Authority is the Attorney General or persons designated by him. For Argentina, the Central Authority is the Subsecretary of Justice or his designee. Requests are to be made directly between the Central Authorities.

Article 3 sets forth the circumstances under which a Party may deny assistance under the Treaty. The Requested State may deny requests relating to military or political offenses, and requests whose execution would prejudice the security or other essential public interests of the [*5] Requested State. Before denying assistance, the Central Authority of the Requested State is required to consult with the Central Authority of the Requesting State to consider whether assistance may be given subject to conditions. The Requesting State is required to comply with any conditions it accepts in order to obtain the assistance sought. If a request is denied, the Requested State is required to inform the Requesting State of the reasons for denial.

Article 4 prescribes the form and content of written requests under the Treaty, specifying in detail the information required in each case in order to facilitate the most complete execution of a request possible. These requirements are similar to those contained in other mutual legal assistance treaties to

which the United States is a Party.

**Article 5** requires prompt compliance with a request or, when appropriate, transmittal to the authority having jurisdiction to execute it in the Requested State. That authority is required to do everything in its power to execute the request. The article also states that the judicial authorities of the Requested State shall have jurisdiction to issue subpoenas, search warrants or other orders [*6] necessary to execute a request. The Requested State is required to represent the interests of the Requested State in any proceedings related to the request.

Although the request must be executed generally in accordance with the laws of the Requested State, the method of execution specified by the Requested State must be followed, if not prohibited by the laws of the Requested State. This article further permits the Requested State to postpone execution of a request or grant it, subject to conditions, if execution would interfere with an ongoing investigation or proceeding in that State. The Requested State must comply with any conditions it accepts in order to obtain the assistance sought. The Requested State is obliged to use its best efforts to respect any confidentiality requirements specified in the request and to advise the Requesting State before executing a request, if such confidentiality cannot be preserved in the process. The Requesting State must be promptly informed of the disposition of the request, whether executed, in whole or in part, or denied.

**Article 6** apportions between the two States the costs incurred in executing a request.

**Article 7** establishes procedures for [*7] insuring the confidentiality of requests and their contents and for restricting the use of any information or evidence obtained under the Treaty or derived therefrom.

**Article 8** requires the Requested State to compel, if necessary, the taking of testimony or production of documents or other evidence in its territory on behalf of the Requesting State. The article further requires the Requested State to inform the Requesting State of the date and place of the taking of testimony or evidence, and to authorize the presence of any persons specified in the request, such as the accused, counsel for the accused, or other interested persons, and to allow such persons to present questions in accordance with the laws of the Requested State. The article also specifies that any assertion of immunity, incapacity or privilege available under the laws of the Requesting State will be noted for later resolution by the Requesting State but will not preclude the taking of testimony or the production of documents in the Requested State. Finally, the article specifies a procedure for the authentication of business records produced, using forms appended to the Treaty.

**Article 9** requires the Requested State [*8] to provide the Requesting State with copies of publicly available documents, records or information in the possession of government departments and agencies in the Requested State. The Requested State retains the discretion to provide non-public information in such departments' and agencies' possession to the same extent and under the same conditions as they are available to its own law enforcement and judicial authorities. The article specifies alternative procedures for the official authentication of documents produced under this articles and provides for their admissibility in the Requesting State, if such procedures are followed.

**Article 10** provides a mechanism for a Requesting State to invite the voluntary appearance and testimony in its territory of a person located in the Requested State. In such a case, the Central Authority of the Requested State is required to invite the person to appear in a non-compulsory manner, indicating the extent to which expenses will be reimbursed by the Requesting State, and to inform the Requesting State promptly of the person's reply.

**Article 11** provides for the voluntary transfer to the Requesting State of a person in custody in the Requested [*9] State, as well as the voluntary transfer to the Requested State of a person in custody in the Requesting State, for purposes of assistance under the Treaty, provided that the Requested State consents. The article provides the express authority for the Receiving State to maintain the person in custody. It further specifies the requirements for keeping the person in custody, insuring his return, and deducting the time spent in custody in one State pursuant to a request made under the Treaty from the time remaining to be served in the other State.

**Article 12** requires the Requested State to make its best efforts to ascertain the location or identity of persons, such as witnesses or suspects, specified in a request.

Article 13 obligates the Requested State to use its best efforts to effect service of any document relating to or forming part of a request under the Treaty. Any request for the service of a document requiring a person to appear in the Requesting State must be transmitted in a reasonable time before the scheduled appearance. The Requested State is required to return proof of service as specified in the Request.

Article 14 obligates each State to execute requests for search, [*10] seizure and delivery of any item to the Requesting State, if the information contained in the request justifies such action under the laws of the Requested State. The article also creates a mechanism for establishing the continuity of custody, and the identity and integrity of any such item in order to preserve its admissibility in evidence in the Requesting State. The article further provides for the protection of rights of any third parties to such items.

Article 15 requires the Requesting State to return any documents, records or evidence received in execution of a request as soon as possible unless the Requested State waives their return.

Article 16 provides a mechanism for one Central Authority to notify the other when it believes that potentially forfeitable proceeds or instrumentalities of a criminal offense are located in the territory of the other State. The latter State may thereupon submit the information to its authorities who are required to determine the appropriate action in conformity with the laws of that State and report the outcome to the other Party. The article further requires both Parties to assist one another, to the extent permitted by their respective laws, [*11] in proceedings relating to such forfeiture, as well as to restitution to victims of crime, and to the collection of fines imposed as sentences in criminal prosecutions.

Article 17 provides that the Treaty does not impede any assistance or procedure available under other international conventions or arrangements or under the domestic laws of the Parties and confirms that assistance may also be provided pursuant to alternative agreements, arrangements and practices.

Article 18 provides for the Parties to consult periodically in order to enable effective implementation of the Treaty.

Article 19 provides that the Treaty shall enter into force upon the exchange of the instruments of ratification and that either Party may terminate the Treaty effective six months after written notice of termination is given to the other Party.

A Technical Analysis explaining in detail the provisions of the Treaty is being prepared by the United States negotiating delegation, consisting of representatives from the Departments of Justice and State, and will be transmitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of [*12] this Treaty by the Senate as soon as possible.

Respectfully submitted,

LAWRENCE S. EAGLEBURGER.

Treaty Between The Government of the United States of America And The Government of the Republic of Argentina On Mutual Legal Assistance in Criminal Matters

The Government of the United States of America and The Government of the Republic of Argentina

Desiring to improve the effectiveness of the law enforcement authorities of both countries in the prevention, investigation, and prosecution of crime through cooperation and mutual legal assistance in criminal matters,

Have agreed as follows:

## ARTICLE 1

Scope of Assistance

01/04/2007 10:35 FAX                                                                 ☒006
Case 0:00-cr-06309-PAS   Document 1002   Entered on FLSD Docket 01/04/2007   Page 5 of 12
United States Mutual Legal Assistance Treaty With the Bahamas                       Page 5 of 12

1. The Contracting Parties shall provide mutual assistance, in accordance with the provisions of this Treaty, in connection with the prevention, investigation, and prosecution of offenses, and in proceedings related to criminal matters.

2. Assistance shall include:

   a) taking the testimony or statements of persons;
   b) providing documents, records, and articles of evidence;
   c) serving documents;
   d) locating or identifying persons;
   e) transferring persons in custody for testimony or other purposes;
   f) executing requests for searches and seizures;
   g) immobilizing assets;
   h) [*13] assisting in proceedings related to forfeiture, restitution, and collection of fines; and
   i) any other form of assistance not prohibited by the laws of the Requested State.

3. Assistance shall be provided without regard to whether the conduct which is the subject of the investigation, prosecution, or proceeding in the Requesting State would constitute an offense under the laws of the Requested State.

4. This Treaty is intended solely for mutual legal assistance between the Parties. The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

## ARTICLE 2

Central Authorities

1. Each Contracting Party shall designate a Central Authority to make and receive requests pursuant to this Treaty.

2. For the United States of America, the Central Authority shall be the Attorney General or the persons designated by him. For the Republic of Argentina, the Central Authority shall be the Subsecretary of Justice or the persons designated by him.

3. The Central Authorities shall communicate directly with one another for the purposes of this Treaty.

## ARTICLE 3

Limitations on Assistance [*14]

1. The Central Authority of the Requested State may deny assistance if:

   a) the request relates to a political offense or an offense under military law which would not be an offense under ordinary criminal law; or

   b) the execution of the request would prejudice the security or similar essential interests of the Requested State.

2. Before denying assistance pursuant to this Article, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

3. If the Central Authority of the Requested State denies assistance, it shall inform the Central Authority of the Requesting State of the reasons for the denial.

## ARTICLE 4

Form and Content of Requests

1. A request for assistance shall be in writing except that the Central Authority of the Requested State may accept a request in another form in urgent situations. In any such case, the request shall be confirmed in writing within ten days thereafter unless the Central Authority of the Requested State [*15] agrees otherwise. The request shall be in the language of the Requested State unless otherwise agreed.

2. The request shall include the following:

   a) the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates;

   b) a description of the subject matter and nature of the investigation, prosecution, or proceeding, including the specific criminal offenses which relate to the matter;

   c) a description of the evidence, information, or other assistance sought; and

   d) a statement of the purpose for which the evidence, information, or other assistance is sought.

3. To the extent necessary and possible, a request shall also include:

   a) information on the identity and location of any person from whom evidence is sought;

   b) information on the identity and location of a person to be served, that person's relationship to the proceedings, and the manner in which service is to be made;

   c) information on the identity and whereabouts of a person to be located;

   d) a precise description of the place or identification of the person to be searched and of the articles to be seized;

   e) a description of the manner in which any testimony or statement is to be [*16] taken and recorded;

   f) a list of questions to be asked;

   g) a description of any particular procedure to be followed in executing the request;

   h) information as to the fees and expenses to which a person asked to appear in the Requesting State will be entitled; and

   i) any other information which may be brought to the attention of the Requested State to facilitate its execution of the request.

## ARTICLE 5

Execution of Requests

1. The Central Authority of the Requested State shall promptly execute the request or, when

appropriate, transmit it to the authority having jurisdiction to do so. The competent authorities of the Requested State shall do everything in their power to execute the request. The Courts of the Requested State shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request.

2. When necessary, the request shall be presented to the appropriate authority by the persons designated by the Central Authority of the Requested State. Such persons shall be legally authorized to act in any proceedings related to the request.

3. Requests shall be executed in accordance with the laws of the Requested State except to the extent that this Treaty [*17] provides otherwise. However, the method of execution specified in the request shall be followed except insofar as it is prohibited by the laws of the Requested State.

4. If the Central Authority of the Requested State determines that execution of a request would interfere with an ongoing criminal investigation or proceeding in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting State. If the Requesting State accepts the assistance subject to the conditions, it shall comply with the conditions.

5. The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State. If the request cannot be executed without breaching the requested confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

6. The Central Authority of the Requested State shall respond to reasonable inquiries by the Central Authority of the Requesting [*18] State concerning progress toward execution of the request.

7. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the outcome of the execution of the request. If the request is not executed, the Central Authority of the Requested State shall inform the Central Authority of the Requesting State of the reasons for the failure to execute.

## ARTICLE 6

Costs

The Requested State shall pay all costs relating to the execution of the request, except for the fees of expert witnesses, the costs of translation and transcription, and the fees and expenses related to travel of persons pursuant to Articles 10 and 11, which fees and expenses shall be paid by the Requesting State.

## ARTICLE 7

Limitations on Use

1. The Requesting State shall not use any information or evidence obtained under this Treaty in any investigation, prosecution, or proceeding other than that described in the request without the prior consent of the Requested State.

2. The Central Authority of the Requested State may request that information or evidence furnished under this Treaty be kept confidential in accordance with conditions which its Central Authority shall [*19] specify. In that case, the Requesting State shall use its best efforts to comply with the conditions specified.

3. Information or evidence which has been made public as a result of the investigation, prosecution

or proceeding in the Requesting State in accordance with paragraph 1 or 2 may thereafter be used for any purpose.

### ARTICLE 8

Taking Testimony and Evidence in the Requested State

1. A person in the Requested State from whom evidence is requested pursuant to this Treaty shall be compelled, if necessary, to appear and testify or produce documents, records, or articles of evidence.

2. Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the testimony or evidence pursuant to this article.

3. The Requested State shall authorize the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to present questions in accordance with the laws of the Requested State.

4. If the person referred to in paragraph 1 asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting State, the testimony or evidence shall nonetheless [*20] be taken and the claim made known to the Central Authority of the Requesting State for resolution by the authorities of that State.

5. Documents, records, and articles of evidence produced in the Requested State or which are the subject of testimony taken under this article may be authenticated by an attestation. In the case of business records, authentication shall be made in the manner indicated in Form A appended to this Treaty. Documents authenticated by Form A shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

### ARTICLE 9

Records of Government Agencies

1. Upon request, the Requested State shall provide the Requesting State with copies of publicly available documents, records, or information in the possession of government departments and agencies in the Requested State.

2. The Requested State may provide copies of any documents, records, or information which are in the possession of a government department or agency in that State but which are not publicly available, to the same extent and under the same conditions as it would be available to its own law enforcement or judicial authorities. The Requested State may in [*21] its discretion deny a request pursuant to this paragraph entirely or in part.

3. Official records produced pursuant to this Article may be authenticated under the provisions of the Convention Abolishing the Requirement of Legalization for Foreign Public Documents dated 5 October 1961 and, if that Convention is not applicable, by the official in charge of maintaining them through the use of Form B appended to this Treaty. No further authentication shall be necessary. Documents authenticated under this paragraph shall be admissible in evidence in the Requesting State.

### ARTICLE 10

Testimony in the Requesting State

01/04/2007 10:36 FAX ☑010
Case 0:00-cr-06309-PAS Document 1610-2 Entered on FLSD Docket 01/04/2007 Page 9 of 12
United States Mutual Legal Assistance Treaty With the Bahamas 100-17 Page 9 of 12

When the Requesting State requests the appearance of a person in that State, the Requested State shall invite the person to appear before the appropriate authority in the Requesting State. The Requesting State shall indicate the extent to which the expenses will be paid. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the response of the person.

## ARTICLE 11

Transfer of Persons in Custody

1. A person in the custody of the Requested State whose presence in the Requesting State is needed for purposes of assistance [*22] under this Treaty shall be transferred from the Requested State for that purpose if both the person and the Central Authority of the Requested State consent to the transfer.

2. A person in the custody of the Requesting State whose presence in the Requested State is needed for purposes of assistance under this Treaty may be transferred to the Requested State if the person consents and if the Central Authorities of both States agree.

3. For purposes of this Article:

   a) the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the sending State;

   b) the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed by both Central Authorities;

   c) the receiving State shall not require the sending State to initiate extradition proceedings for the return of the person transferred; and

   d) the person transferred shall receive credit for service of any sentence imposed in the sending State for time served in the custody of the receiving State.

## ARTICLE 12

Location or Identification of Persons

The Requested State shall use its best efforts [*23] to ascertain the location or identity of persons specified in the request.

## ARTICLE 13

Service of Documents

1. The Requested State shall use its best efforts to effect service of any documents relating to or forming part of any request for assistance made by the Requesting State under the provisions of this Treaty.

2. The Requesting State shall transmit any request for the service of a document requiring the appearance of a person before an authority in the Requesting State a reasonable time before the scheduled appearance.

3. The Requested State shall return a proof of service in the manner specified in the Request.

## ARTICLE 14

Search and Seizure

1. The Requested State shall execute a request for the search, seizure, and delivery to the Requesting State of any document, record, or article, if the request includes the information justifying such action under the laws of the Requested State.

2. Upon request, every official who has custody of a seized article shall certify, through the use of Form C appended to this Treaty, the continuity of custody, the identify of the article, and the integrity of its condition. No further certification shall be required. The certificates shall be admissible [*24] in evidence in the Requesting State as proof of the truth of the matters set forth therein.

3. The Central Authority of the Requested State may require that the Requesting State agree to terms and conditions deemed necessary to protect third party interests in the document, record, or article to be transferred.

## ARTICLE 15

Return of Documents, Records, and Articles of Evidence

The Central Authority of the Requesting State shall return any documents, records, or articles of evidence furnished to it in execution of a request under this Treaty as soon as possible unless the Central Authority of the Requested State waives their return.

## ARTICLE 16

Assistance in Forfeiture Proceedings

1. If the Central Authority of one Party becomes aware of fruits or instrumentalities of offenses which are located in the territory of the other Party and may be forfeitable or otherwise subject to seizure under the laws of that State, it may so inform the Central Authority of the other Party. If that other Party has jurisdiction in this regard it may present this information to its authorities for a determination whether any action is appropriate. These authorities shall issue their decision in accordance [*25] with the laws of their country, and shall, through their Central Authority, report to the other Party on the outcome of the decision.

2. 

3. The Contracting Parties shall assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the fruits and instrumentalities of offenses, restitution to the victims of crime, as well as the collection of fines imposed by judicial order.

4. A Requested Party in control of forfeited assets shall dispose of them in accordance with its law. To the extent permitted by its laws and upon such terms as it considers reasonable, either Party may transfer forfeited assets or the proceeds of their sale to the other Party.

## ARTICLE 17

Compatibility with Other Treaties, Agreements, or Arrangements

Assistance and procedures set forth in this Treaty shall not prevent either Contracting Party from granting assistance to the other Party through the provisions of other international agreements to which

01/04/2007 10:36 FAX ☒012
Case 0:00-cr-06309-PAS Document 1610-2 Entered on FLSD Docket 01/04/2007 Page 11 of 12
United States Mutual Legal Assistance Treaty With the Bahamas 100-17 Page 11 of 12

it may be a party, or through the provisions of its national laws. The Parties may also provide assistance pursuant to any bilateral arrangement, agreement, or practice which may be applicable.

**ARTICLE 18**

Consultation [*26]

The Central Authorities of the Contracting Parties shall consult, at times mutually agreed to by them, to enable the most effective use to be made of this Treaty.

**ARTICLE 19**

Ratification, Entry Into Force, and Termination

1. This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged at Washington, D.C. as soon as possible.

2. This Treaty shall enter into force upon the exchange of instruments of ratification.

3. Either Party may terminate this Treaty by means of written notice to the other Party. Termination shall take effect six months following the date of notification.
DONE in Buenos Aires, this 4 day of December, 1990, in two originals, in the English and Spanish languages, both texts being equally authentic.

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA:
FOR THE GOVERNMENT OF THE REPUBLIC OF ARGENTINA:

**Form A**

CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, _____ (Name), attest on penalty of criminal punishment for false statement or false attestation that I am employed by _____ (Name of Business from which documents are sought) and that my official title is _____ (Official Title). I further state that each of the records attached [*27] hereto is the original or a duplicate of the original records in the custody of _____ (Name of Business from which documents are sought).

I further state that:

A) such records were made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;

B) such records were kept in the course of a regularly conducted business activity;

C) the business activity made such records as a regular practice; and

D) if such record is not the original, such record is a duplicate of the original.

_____ Signature _____ Date

Sworn to or affirmed before me, _____ (Name), a _____, (Judge, Magistrate, or Commissioner of the Court) this _____ day of ___, 19_____.

**Form B**

ATTESTATION OF AUTHENTICITY OF FOREIGN PUBLIC DOCUMENTS

I, ___ (Name), attest on penalty of criminal punishment for false statement or attestation that my

01/04/2007 10:36 FAX                                                                                       ☒013
Case 0:00-cr-06309-PAS   Document 1610-2   Entered on FLSD Docket 01/04/2007   Page 12 of 12
United States Mutual Legal Assistance Treaty With the Bahamas 100-17                    Page 12 of 12

position with the Government of ___ (Country) is ___ (Official Title) and that in that position I am authorized by law of ___ (Country) to attest that the documents attached and described below are true and accurate copies of original official records which are recorded or filed in ___ (Name of Office or Agency), [*28] which is a government office or agency of the Government of ___ (Country).

Description of Documents:

_____ (Signature)

_____ (Title)

_____ (Date)

**Form C**

### ATTESTATION WITH RESPECT TO SEIZED ARTICLES

I, _____ (Name), attest on penalty of criminal punishment for false statement or attestation that my position with the Government of ___ (Country) is _____ (Title). I received custody of the articles listed below from _____ (Name of Person) on _____ (Date), at _____ (Place). I relinquished custody of the articles listed below to _____ (Name of Person) on _____ (Date), at _____ (Place) in the same condition as when I received them (or, if different, as noted below). Description of Articles:

Changes in Condition while in my custody:

Official Seal

_____ Signature

_____ Title

_____ Place

_____ Date

The Office of International Affairs* Department of Justice * 1301 New York Ave., NW * Suite 900 * Washington, D.C. 20005

Last updated by usdoj-crm/sj
October 12, 2006